FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
United Shipping Agency Srl
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger (MU 0045)
Gina M. Venezia (GV 1551)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BAJA FERRIES USA L.L.C.,

08-cv-06031 (DC)

                Plaintiff,

**Declaration of Mihai Felescu
In Support of Motion
to Vacate the
Rule B Attachment**

    -against-

CALDER SEACARRIERS CORP.,
FENBY CO. LTD., UNITED SHIPPING
AGENCY SRL, BRISTOL MARINE CO.
LTD. and BML CHARTERING,

                Defendants.
--------------------------------------------------------x

      MIHAI FELESCU, pursuant to 28 U.S.C. §1746 hereby declares and says the following

under penalty of perjury:

      1.      I am the Agency and Operations Manager of Defendant United Shipping Agency

Srl ("USA"). I have held this position since 1996. I am familiar with the dispute between Baja

Ferries USA L.L.C. ("Baja") and USA that is the subject of this action and I submit this

Declaration in support of Defendant's application to vacate the attachment.

      2.      I reside at Constantza, Romania. I consider myself fluent in the English language

and I assisted in the drafting of this Declaration, have reviewed and signed this Declaration and

submit that the contents are true and within my own personal knowledge.

3.      USA is incorporated under the laws of Romania and maintains its principal place of business in Constantza, Romania.  USA conducts its entire business locally in Constantza. USA maintains no offices, conducts no business, enters into no contracts and has no authority to do business as a foreign corporation in New York State or any other jurisdiction in the United States.

4.      USA is a land-based company.  We do not own or operate any vessels and act solely as an agency and occasionally, as dry cargo brokers, and did so in this case.

**A.      <u>The Agency Contract and Duties of USA</u>**

5.      USA was appointed to act as a port agent by Bristol Marine Co. Ltd. ("Bristol") by a charter party dated June 6, 2008, entered into between Bristol, as disponent owners, and Interagro S.A., as charterers.  USA's agency fee was paid by its principal, Bristol.  Annexed hereto as **Exhibit A** is a copy of the charter party, as **Exhibit B** is a copy of the agency appointment and, as **Exhibit C** is the proof of payment of USA's agency fees by Bristol via Interagro S.A.  Bristol informed USA that their head owners in the charter chain were non-party Oceanstar Management Inc.  No other information concerning the charter chain was provided to USA.

6.      Plaintiff Baja was not a party to the June 6, 2008 charter party and did not pay or advance any form of payment to USA.

7.      On June 18, 2008, the bills of lading were issued and marked "freight prepaid". Annexed hereto as **Exhibit D** are copies of the bills of lading.  USA was required to release the bills of lading only upon Bristol's receipt of a swift copy from Interagro's bank confirming that freight had been irrevocably remitted to Bristol's account.  (See **Exhibit A**, Fixture at p. 4 and Proforma at Clause 30; **Exhibit B** at p. 3).

8.     That same day, USA received instructions from Unishipping, as agents for Baja, not to release the bills of lading.  Annexed hereto as **Exhibit E** are Unishipping's instructions. There was no contract between USA and Unishipping/Baja which obligated USA to follow any instructions from Unishipping/Baja regarding the release of the bills of lading.

9.     Following the completion of the loading, Interagro paid freight to Bristol from an account at BNP Paribas (Swisse) Geneva.  Annexed hereto as **Exhibit F** is a copy of the Interagro swift confirmation of the freight payment.

10.     USA retained the bills of lading until June 20, 2008 when it received Bristol's confirmation that Interagro had provided the swift confirmation of its freight payment to Bristol, and Bristol's written authorization/instruction to release the bills of lading.  Annexed hereto as **Exhibit G** is a copy of Bristol's authorization to release the bills of lading sent by its brokers BML Chartering.  Had USA not released the bills of lading upon receipt of Bristol's written authorization to do so, USA would have breached its contract with Bristol and delayed the release of the goods to the buyer who had properly paid for them.

11.     Other than the Rule B security action commenced by Baja in New York, no suit or other legal/arbitral proceeding on the merits of this dispute has been filed against USA in any jurisdiction.

**B.     The Attachment of Funds Advanced For Crew Wages**

12.     The funds restrained by the attachment are needed no later than Tuesday morning Romanian time so as to be able to pay wages to crew departing from the M/V JUPITER BRIGHT, an unrelated ship.  None of the other parties in this suit are involved with this vessel. The seamen's wages have already been earned and will become due Tuesday morning.  Annexed

hereto as **Exhibit H** are the details of the crew change and wages due to be paid provided by USA's principal.

13.     No part of the restrained funds belong to USA.  Under an unrelated agency contract with non-party Stx Pos Ship Management Co., USA's principal, as owners of the M/V JUPITER BRIGHT, originated the wire transfer in the amount of $50,000 to United so that it could be converted into cash in Constanza and advanced to the Master of the M/V JUPITER BRIGHT during the crew change at Constanza.  The Details of Payment Order contained the reference "CASH TO MASTER MV JUPITER BRIGHT".  USA was under a contractual obligation to hold the funds in trust while they were converted into cash and to provide the entire amount to the Master.  Annexed hereto as **Exhibit I** is a copy of the Details of Payment Order.

14.     If these funds are not paid to the crew on Tuesday morning, the crew are likely to obtain the immediate arrest of the ship which will cause delay to the ship and cause damages in the form of costs for berthing, other port fees and penalties, delays in cargo delivery and delays in vessel's schedule for Turkish Straits passage.

15.     As such, the damages that will almost certainly result from failure to release the restrained funds on time far exceed the sum restrained.  USA's business is effectively blocked by this Order as it is an essential part of their business to have free movement of Clients' money in the capacity of an Agent. Serious financial hardship is now accumulating and their business reputation is irreversibly being damaged.

16.     Accordingly, the Court's prompt decision on this application is respectfully requested so as to avoid unnecessary delays to the vessel due to an inability to pay the departing seamen their due wages, and to allow USA to continue its business operations as port agents.

17.     The Exhibits to this Declaration are records which are kept in the ordinary course of business of USA.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: Constantza, Romania
        31st July, 2008

By: _____
                Mihai Felescu

# Exhibit A

**Mihai Felescu**

| | |
|---|---|
| **From:** | "BML" <bmlchart@ath.forthnet.gr> |
| **To:** | "Mihai Felescu" <mihai@united.ro> |
| **Sent:** | Friday, June 06, 2008 4:17 PM |
| **Subject:** | Fw: MV RENATA / INTERAGRO |

MIHAI/CPT DIMITRI

MV RENATA/INTERAGRO
----
TKS VM YOUR BELOW RECAP WCH OWS CONFIRM.

AWAITING YOUR FURTHER ON SUBS AND CP DETAILS.

BEST REGARDS/CPT DIMITRI

----- Original Message -----
**From:** Mihai Felescu
**To:** bml chartering capt dimitri
**Sent:** Friday, June 06, 2008 16:13
**Subject:** MV RENATA / INTERAGRO

CAPT DIMITRI/MIHAI

RE MV RENATA/INTERAGRO
--
PLEASE FIND BELOW RECAP OF MAIN TERMS WHICH PLEASE CONFIRM BY RETURN AS
FOLLOWS:

M/V RENATA  (EX - RUNNER)
T Y P E    : MPPSE TWEEN CONTAINER VSL
BUILT      : 1979
FLAG       : BAHAMAS
PORT OF REG : NASSAU
CLASS      : L.R. +100 A1  + LMC
CALL SIGN  : C 6 H W 5
P + I CLUB  : LONDON STEAMSHIP MUTUAL

LOA / BEAM   : 149.80 M / 22.86 M
S.DWT / DRAFT : 15,120 MT / 9.64 M
GRN / BLE    : 21,908.9 / 20,146.3 CBM
GRT / NRT    : 11,200 / 6,713
HO / HA      : 4 / 7  (3 TWEEN HA - 1 SINGLE HA)
MCGREGOR HATCH COVERS FOLDING FLUSH TYPE - HYDRO DRIVEN CONSTANTS : 300
MT (EXCL F.W.)

GEAR : 6 VELLE SHIPSHAPE DERRICKS WITH 6 MTRS OUTREACH
HOLD NO.1: 1 D X 35 MT
HOLD NO.2: 2 D X 35 MT / COMBINED 60 MT
HOLD NO.3: 2 D X 50 MT / COMBINED 90 MT
HOLD NO.4: 1 D X 35 MT

29.07.2008

GRAIN / CO2 / ELECTR.VENT.FITTED (12 ACPH BSS EMPTY HOLDS)

HATCHES & TWEEN DECKS DIMENSIONS
                WEATHER DECK HATCHES   TWEEN DECK HATCHES
HOLD NO.1 SNGLE HATCH  SINGLE 13.30 X 8.0 M   SINGLE 9.10 X 8.0 M
HOLD NO.2 TWEEN HATCH  EACH   25.50 X 8.0 M   EACH 25.50 X 8.0 M
HOLD NO.3 TWEEN HATCH  EACH   25.50 X 8.0 M   EACH 25.50 X 8.0 M
HOLD NO.4 TWEEN HATCH  EACH   12.75 X 8.0 M   EACH 12.75 X 8.0 M

NOMINAL CONTAINER CAPACITY : 597 TEUS
HOMOGEN CONTAINER CAPACITY : 440 TEUS @ 14 MT (SUB STABILITY)
REEFER PLUGS (FEMALE)     : 50 (380 V  AC 3 PHASE  60 HZ)

STRENGTHS
---
TANKTOP ALL HOLDS      : 10.26 MT/M2
TWEEN DECKS ALL HOLDS   : 3.00 MT/M2
MAIN DECK + HATCH COVERS : 1.75 MT/M2

CUBIC BREAKDOWN
---
              GRAIN    BALE
NO.1 TWN DECK    1,198.0   1,053.7
  LWR HOLD    1,271.2   1,074.3
   T O T A L    2,469.2   2,128.0

NO.2 TWN DECK    2,981.2   2,786.5
  LWR HOLD    4,811.1   4,365.4
   T O T A L    7,792.3   7,151.9

NO.3 TWN DECK    3,001.8   2,815.2
  LWR HOLD    4,857.8   4,541.0
   T O T A L    7,859.6   7,356.2

NO.4 TWN DECK    1,519.4   1,425.5
  LWR HOLD    2,268.4   2,084.7
   T O T A L    3,787.8   3,510.2
-----------------------------------
   GRAND TOTAL  21,908.9  20,146.3

 ALL DETS ABT/WOG
- ATTACHED VESSEL'S DESCRIPTION IS TO FORM PART OF THE CHARTER PARTY

- BRISTOL MARINE CO LTD AS DISPONENT OWNERS

- ALL NEGOTIATIONS AND EVENTUAL FIXTURE TO BE KEPT STRICTLY P+C AND NOT TO
BE REPORTED

- VESSEL IS PRESENTLY IN VARNA DRYDOCK COMPLETING REPAIRS/SURVEY, ETS
VARNA 10.06.2008, ETA CONSTANTZA 10.06.2008, WP+AGW

29.07.2008

- OWNERS GUARANTEE VESSEL TO BE FULLY CLASSED/PANDI COVERED FOR THE ENTIRE DURATION OF THE VOYAGE UNDER THIS CHARTER PARTY
- OWNERS GUARANTEE VESSEL IS SUITABLE FOR GRAB DISCHARGE, AS FAR AS VESSEL'S DESCRIPTION AND PLANS ALLOWING

FOR:

- ACCOUNT INTERAGRO S.A. BUCHAREST
1-3 VERII STREET, SECTOR 2 BUCHAREST, ROMANIA

- SUB STEM/SHIPPERS/RECEIVERS APPROVALS TO BE LIFTED LATEST TODAY 06.06.2008 17.00HRS ROMANIAN TIME

- 12500MT 10PCT MOLOO BULK CALCIUM AMMONIUM NITRATE STOWING ABOUT 40 CUBIC FEET/METRIC TON, WITHOUT GUARANTEE. OWNERS CONFIRM THEIR INTENTION IS TO LOAD 13750MT

- LAYCAN 09/12 JUNE 2008

- LOADING 1/2 SAFE BERTH(S) ALWAYS AFLOAT CONSTANTZA, ROMANIA

- DISCHARGING 1/2 SAFE BERTH(S) ALWAYS AFLOAT MOMBASA, KENYA, WHERE OWNERS CONFIRM VESSEL'S ARRIVAL DRAFT WITH 13750MT ON BOARD AROUND 9.55METERS

- SHIFTING EXPENSES/TIME FOR CHARTERERS ACCOUNT BOTH ENDS

- LOADING 3000MT PER WEATHER WORKING DAY OF 24 CONSECUTIVE HOURS, SATURDAYS, SUNDAYS AND HOLIDAYS EXCEPTED EVEN IF USED. TIME FROM 17.00HRS FRIDAY OR ON A DAY PRECEEDING A HOLIDAY UNTIL 08.00HRS MONDAY OR THE NEXT WORKING DAY AFTER A HOLIDAY NOT TO COUNT EVEN IF USED.

- DISCHARGING 2500MT PER WEATHER WORKING DAY OF 24 CONSECUTIVE HOURS, SATURDAYS, SUNDAYS AND HOLIDAYS EXCEPTED EVEN IF USED. TIME FROM 17.00HRS FRIDAY OR ON A DAY PRECEEDING A HOLIDAY UNTIL 08.00HRS MONDAY OR THE NEXT WORKING DAY AFTER A HOLIDAY NOT TO COUNT EVEN IF USED.

- FREIGHT USD        PMT FREE IN OUT TRIMMED BASIS 1/1, PAYABLE 97.50PCT, LESS COMMISSIONS, WITHIN 3 BANKING DAYS AFTER SIGNING/RELEASING 'CLEAN ON BOARD' CONGEN BILLS OF LADING MARKED 'FREIGHT PAYABLE AS PER CHARTER PARTY', TO OWNERS NOMINATED BANK ACCOUNT, BALANCE FREIGHT TO BE SETTLED WITH DEMURRAGE/DESPATCH AT BOTH ENDS, WITHIN 15DAYS AFTER COMPLETION OF DISCHARGING AND RECEIPT/AGREEMENT OF OWNERS, RESPECTIVELY CHARTERERS LAYTIME CALCULATIONS, TOGETHER WITH NOTICE OF READINESS/STATEMENT OF FACTS AT BOTH ENDS. FREIGHT DEEMED EARNED UPON SHIPMENT AND SIGNING BILLS OF LADING, DISCOUNTLESS AND NON-RETURNABLE, VESSEL AND/OR CARGO LOST OR NOT LOST.

- IF CHARTERERS REQUIRE 'CLEAN ON BOARD' BILLS OF LADING, THE MASTER HAS THE RIGHT, IN CONJUCTION WITH THE CARGO SURVEYOR(S), TO REJECT DAMAGED

29.07.2008

CARGO, WHILE CHARTERERS/SHIPPERS TO REPLACE SAME WITH SOUND ONE.

- IF CHARTERERS REQUIRE 'FREIGHT PREPAID' BILLS OF LADING, SAME TO BE KEPT BY VESSEL'S AGENTS AT LOADING PORT AND TO BE RELEASED ONLY UPON OWNERS RECEIVE SWIFT COPY FROM CHARTERERS BANK CONFIRMING FREIGHT HAS BEEN IRREVOCABLY REMITTED TO OWNERS NOMINATED BANK ACCOUNT.

- DEMURRAGE USD 17,500.-PER DAY PRORATA/HALF DESPATCH ON WORKING TIME SAVED AT BOTH ENDS

- CHARTERERS AGENTS AT BOTH ENDS, OWNERS PAYING CUSTOMARY D/A AT LOADING PORT UNITED SHIPPING AGENCY, E-MAIL: OFFICE@UNITED.RO AT DISCHARGING PORT: REVERTING

- EXTRA INSURANCE, IF ANY, FOR CHARTERERS ACCOUNT

- TAXES/DUES ON CARGO/FREIGHT FOR CHARTERERS ACCOUNT BOTH ENDS

- TAXES/DUES ON VESSEL/CREW/FLAG/OWNERSHIP FOR OWNERS ACCOUNT BOTH ENDS

- NOTICE OF READINESS TO BE TENDERED WHETHER IN PORT OR NOT, WHETHER IN BERTH OR NOT, WHETHER IN FREE PRATIQUE OR NOT, WHETHER CUSTOMS CLEARED OR NOT, VIA CABLE/RADIO/VHF/TELEX/E-MAIL, DURING OFFICE HOURS 0800/1700HRS MONDAY TO FRIDAY, AND TIME TO COUNT 2PM/8AM AT BOTH ENDS

- G/A-ARBITRATION, IN LONDON, ENGLISH LAW TO APPLY/Y-A RULES'74 AMENDED'90

- COMMISSION 2.50PCT ADDRESS + 1.25PCT TO UNITED SHIPPING AGENCY ON FREIGHT/DEADFREIGHT/DEMURRAGE

- OTHERWISE SUBDETAILS ON CHARTERERS EXECUTED PROFORMA GCN C/P'76 END+

AWAITING YOURS,

BEST REGARDS
MIHAI FELESCU


_____ NOD32 3163 (20080606) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

29.07.2008

Adopted by
the Documentary Committee of the General
Council of British Shipping, London
and the Documentary Committee of The Japan
Shipping Exchange, Inc., Tokyo

| | |
|---|---|
| 1. Shipbroker<br><br>**United Shipping Agency Ltd**<br>Constantza Port, Berth no.31<br>P.O.Box 102, Constanta 900900 - Romania<br>Phone:0241-672929, Fax:612420, e-mail: office@united.ro | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE<br>UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)<br>INCLUDING "F.I.O." ALTERNATIVE, ETC.<br>(To be used for trades for which no approved form is in force)<br>CODE NAME: "GENCON"     Part I |
| | 2. Place and date<br>**Constantza, 06.06.2008** |
| 3. Owners/Place of business (Cl. 1)<br>**Head Owners Messrs,**<br>**Oceanstar Management Inc.**<br>**18 G. Lambraki Street, Glyfada 16674, Athens, Greece**<br>**Disponent Owners Messrs,**<br>**Bristol Marine Co Ltd**<br>**80, Broadway Street, Monrovia, Liberia** | 4. Charterers/Place of business (Cl.1)<br>**Messrs,**<br>**Interagro S.A.**<br>**1-3 Verii Street, Sector 2 Bucharest, Romania** |
| 5. Vessel's name (Cl. 1)<br>**M/V RENATA** | 6.  GRT/NRT (Cl. 1)<br>**11200 / 6713** |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)<br><br>**summer dwt 15120 metric tons** | 8. Present position (Cl. 1)<br><br>**In Varna drydock completing repairs/survey** |
| 9. Expected ready to load (abt.) (Cl. 1)<br>**09.06.2008** | |
| 10. Loading port or place (Cl. 1)<br><br>**one/two safe berth(s) always afloat Constantza, Romania.** | 11. Discharging port or place (Cl. 1)<br>**one/two safe berth(s) always afloat Mombasa, Kenya, where**<br>**Owners confirm vessel's arrival draft with 13750MT on board**<br>**around 9.55meters** |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br><br>**12,500mt 10% more or less in Owners option of bulk calcium ammonium nitrate stowing about 40 cubic feet / metric ton,**<br>**without guarantee**<br>**Owners confirm their intention is to load 13750metric tons** | |
| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)<br><br>**see clause 30.** | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br><br>**see clause 30.** |
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)<br>**free in out trimmed** | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6)<br>a) Laytime for loading<br>**see clauses 18 and 28.**<br>b) Laytime for discharging<br>**see clauses 18 and 28.**<br>c) Total laytime for loading and discharging |
| 17. Shippers (state name and address) (Cl. 6) | |
| 18. Demurrage rate (loading and discharging) (Cl. 7)<br>**see clause 43.** | 19. Cancelling date (Cl. 10)<br>**12.06.2008** |
| 20. Brokerage commission and to whom payable (Cl. 14)<br>**2.50% address commission to Charterers + 1.25% commission to United Shipping Agency on freight/dead freight/demurrage.** | |
| 21. Additional clauses covering special provisions, if agreed.<br><br>**additional clauses from 18 to 50, both inclusive, as attached herewith, are deemed to be incorporated and form part of this**<br>**charter party** | |

Copyright, published by The Baltic
and International Maritime
Conference (BIMCO), Copenhagen

It is mutually agreed  that this Contract  shall be performed subject  to the conditions  contained  in this charter  which shall include Part  I as well as Part  II.
In the event of a conflict of conditions,  the provisions of Part  I shall prevail over those of Part  II  to the extent  of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

**PART II**

"Gencon" Charter (As Revised 1922 and 1976)
Including "F.I.O." Alternative, etc.

1. It is agreed between the party mentioned in Box 3 as Owners of the
steamer or motor-vessel named in Box 5, of the gross/nett Register
tons indicated in Box 6 and carrying about the number of tons of
deadweight cargo stated in Box 7, now in position as stated in Box 8
and expected ready to load under this Charter about the date indi-
cated in Box 9, and the party mentioned as Charterers in Box 4
that:
The said vessel shall proceed to the loading port or place stated
in Box 10 or so near thereto as she may safely get and lie always
afloat, and there load a full and complete cargo (if shipment of deck
cargo agreed same to be at Charterers' risk) as stated in Box 12
(Charterers to provide all mats and/or wood for dunnage and any
separations required, the Owners allowing the use of any dunnage
wood on board if required) which the Charterers bind themselves to
ship, and being so loaded the vessel shall proceed to the discharg-
ing port or place stated in Box 11 as ordered on signing Bills of
Lading or so near thereto as she may safely get and lie always
afloat and there deliver the cargo on being paid freight on delivered
or intaken quantity as indicated in Box 13 at the rate stated in
Box 13.                                                                        1-20

2. Owners' Responsibility Clause
Owners are to be responsible for loss of or damage to the goods
or for delay in delivery of the goods only in case the loss, damage
or delay has been caused by the improper or negligent stowage of
the goods (unless stowage performed by shippers/Charterers or their
stevedores or servants) or by personal want of due diligence on the
part of the Owners or their Manager to make the vessel in all respects
seaworthy and to secure that she is properly manned, equipped and
supplied or by the personal act or default of the Owners or their
Manager.
And the Owners are responsible for no loss or damage or delay
arising from any other cause whatsoever, even from the neglect or
default of the Captain or crew or some other person employed by the
Owners on board or ashore for whose acts they would, but for this
clause, be responsible, or from unseaworthiness of the vessel on
loading or commencement of the voyage or at any time whatsoever.
Damage caused by contact with or leakage, smell or evaporation
from other goods or by the inflammable or explosive nature or in-
sufficient package of other goods not to be considered as caused
by improper or negligent stowage, even if in fact so caused.          21-40

3. Deviation Clause
bunker    The vessel has liberty to call at any port or ports in any order, for
any purpose, to sail without pilots, to tow and/or assist vessels in
all situations, and also to deviate for the purpose of saving life and/
or property,                                                                   41-44

4. Payment of Freight     see clause 30
The freight to be paid in the manner prescribed in Box 14 in cash
without discount on delivery of the cargo at mean rate of exchange
ruling on day or days of payment, the receivers of the cargo being
bound to pay freight on account during delivery, if required by Cap-
tain or Owners.
Cash for vessel's ordinary disbursements at port of loading to be
advanced by Charterers if required at highest current rate of ex-
change, subject to two per cent. to cover insurance and other ex-
penses.                                                                        45-55

5. Loading/Discharging Costs
(a) Gross Terms     see clause 28
The cargo to be brought alongside in such a manner as to enable
vessel to take the goods with her own tackle. Charterers to procure
and pay the necessary men on shore or on board (as the lighters to do
the work there, vessel only heaving the cargo on board.
If the loading takes place by elevator, cargo to be put free in vessel's
holds, Owners only paying trimming expenses.
Any pieces and/or packages of cargo over two tons weight, shall be
loaded, stowed and discharged by Charterers at their risk and expense.
The cargo to be received by Merchants at their risk and expense
alongside the vessel not beyond the reach of her tackle.
(b) F.i.o. and free stowed/trimmed
The cargo shall be brought into the holds, loaded, stowed and/or trim-
med and taken from the holds and discharged by the Charterers or
their Agents, free of any risk, liability and expense whatsoever to the
Owners.
The Owners shall provide winches, motive power and winchmen from
the Crew if requested and permitted; if not, the Charterers shall
provide and pay for winchmen from shore and/or cranes, if any, (This
provision shall not apply if vessel is gearless and stated as such in
Box 15).                                                                       56-77
*Indicate alternative (a) or (b), as agreed, in Box 15.

6. Laytime     see clauses 18 and 28
(a) Separate laytime for loading and discharging
The cargo shall be loaded within the number of running hours as
indicated in Box 16, weather permitting, Sundays and holidays ex-
cepted, unless used in which event time actually used shall count.
The cargo shall be discharged within the number of running hours
as indicated in Box 16, weather permitting, Sundays and holidays ex-
cepted, unless used, in which event time actually used shall count.
(b) Total laytime for loading and discharging
The cargo shall be loaded and discharged within the number of total
running hours as indicated in Box 16, weather permitting, Sundays and
holidays excepted, unless used, in which event time actually used
shall count.
(c) Commencement of laytime (loading and discharging)
Laytime for loading and discharging shall commence at 2 p.m. if
notice of readiness is given before noon, and at 8 a.m. next working
day if notice given during office hours after noon. Notice at loading
port to be given to the Shippers named in Box 17.
Time actually used before commencement of laytime shall count.
Time lost in waiting for berth to count as loading or discharging
time, as the case may be.     see clause 21                                    78-100
*Indicate alternative (a) or (b) as agreed, in Box 16.

7. Demurrage   see clause 23
Ten running days' demurrage at the rate stated in Box 18 per 112
day or pro rata for any part of a day, payable day by day, to be
allowed Merchants altogether at ports of loading and discharging.            101-104

8. Lien Clause
Owners shall have a lien on the cargo for freight, dead-freight,              105
demurrage and damages for detention. Charterers shall remain res-            106
ponsible for dead-freight and demurrage (including damages for              107
detention), incurred at port of loading. Charterers shall also remain       108
responsible for freight and demurrage (including damages for deten-         109
tion) incurred at port of discharge, but only to such extent as the          110
Owners have been unable to obtain payment thereof by exercising              111
the lien on the cargo.                                                        112-113

9. Bills of Lading   see clause 30
The Captain to sign Bills of Lading at such rate of freight as              114
presented without prejudice to this Charterparty, but should the             115
freight by Bills of Lading amount to less than the total chartered           116
freight the difference to be paid to the Captain in cash on signing          117
Bills of Lading.                                                              118-119

10. Cancelling Clause
Should the vessel not be ready to load (whether in berth or not) on         120
or before the date indicated in Box 19, Charterers have the option          121
of cancelling this contract, such option to be declared, if demanded,       122
at least 48 hours before vessel's expected arrival at port of loading.       123
Should the vessel be delayed on account of average or otherwise,            124
Charterers to be informed as soon as possible, and if the vessel is          125
delayed for more than 10 days after the day she is stated to be              126
expected ready to load, Charterers have the option of cancelling this        127
contract, unless a cancelling date has been agreed upon.                     128-129

11. General Average    in London
General average to be settled according to York-Antwerp Rules,              130
1974. Proprietors of cargo to pay the cargo's share in the general          131
expenses even if same have been necessitated through neglect or             132
default of the Owners' servants (see clause 2).                              133
1950 and subsequent amendments                                               134

12. Indemnity
Indemnity for non-performance of this Charterparty, proved damages,         135
not exceeding estimated amount of freight.                                   136-137

13. Agency    see clause 42
In every case the Owners shall appoint his own Broker or Agent both         138-139
at the port of loading and the port of discharge.                            140

14. Brokerage
A brokerage commission at the rate stated in Box 20 on the freight           141
earned is due to the party mentioned on the freight in Box 20.               142
In case of non-execution at least 1/3 of the brokerage on the estimated     143
amount of freight and dead-freight to be paid by the Owners to the           144
Brokers as indemnity for the latter's expenses and work, in case of          145
more voyages the amount of indemnity to be mutually agreed.                  146-147

15. GENERAL STRIKE CLAUSE
Neither Charterers nor Owners shall be responsible for the con-             148
sequences of any strikes or lock-outs preventing or delaying the             149
fulfilment of any obligations under this contract.                           150
If there is a strike or lock-out affecting the loading of the cargo,         151
or any part of it, when vessel is ready to proceed from her last port        152
or at any time during the voyage to the port or ports of loading             153
after her arrival there, Captain or Owners may ask Charterers to             154
declare, that they agree to reckon the laydays as if there were no           155
strike or lock-out. Unless Charterers have given such declaration in         156
writing (by telegram, if necessary) within 24 hours, Owners shall            157
have the option of cancelling this contract. If part cargo has already       158
been loaded, Owners must proceed with same, (freight payable on              159
loaded quantity only) having liberty to complete with other cargo            160
on the way for their own account.                                            161
If there is a strike or lock-out affecting the discharge of the cargo        162
on or after vessel's arrival at or off port of discharge and same has        163
not been settled within 48 hours, Receivers shall have the option of         164
keeping vessel waiting until such strike or lock-out is at an end            165
against paying half demurrage after expiration of the time provided          166
for discharging, or of ordering the vessel to a safe port where she          167
can safely discharge without risk of being detained by strike or lock-       168
out. Such orders to be given within 48 hours after Captain or Owners         169
have given notice to Charterers of the strike or lock-out affecting the      170
discharge. On delivery of the cargo at such port, all conditions             171
of this Charterparty and of the Bill of Lading shall apply and vessel        172
shall receive the same freight as if she had discharged at the               173
original port of destination, except that if the distance of the sub-        174
stituted port exceeds 100 nautical miles, the freight on the cargo           175
delivered at the substituted port to be increased in proportion.             176-177

16. War Risks ("Voywar 1950")
(1) In these clauses "War Risks" shall include any blockade or any          178-179
action which is announced as a blockade by any Government or by any          180
belligerent or by any organized body, sabotage, piracy, and any acts of      181
or threatened war, hostilities, warlike operations, civil war, civil com-   182
motion, or revolution.                                                       183
(2) If at any time before the Vessel commences loading, it appears that     184
performance of the contract will subject the Vessel or her Master and        185
crew or her cargo to war risks at any stage of the adventure, the Owners     186
shall be entitled by letter or telegram despatched to the Charterers, to     187
cancel this Charter.                                                         188
(3) The Master shall not be required to load cargo or to continue            189
loading or to proceed on or to sign Bills of Lading for any adventure         190
on which or any port at which it appears that the Vessel, her Master          191
and crew or her cargo will be subjected to war risks, in the event of         192
the exercise by the Master of his right under this Clause after part or       193
full cargo has been loaded, the Master shall be at liberty either to dis-    194
discharge such cargo at the loading port or to proceed therewith.            195
In the latter case the Vessel shall have liberty to carry other cargo        196
for Owners' benefit and accordingly to proceed on and load or                197
discharge such other cargo at any other port or ports whatsoever, the        198
backwards or forwards, although in a contrary direction to or out of or       199
beyond the ordinary route, in the event of the Master electing to            200
proceed with part cargo under this Clause freight shall in any case          201
be payable on the quantity delivered.                                        202
(4) If at the time the Master decides to proceed with part or full cargo     203
under Clause 3, or after the Vessel has left the loading port, or the        204

PART II
"Gencon" Charter (As Revised 1922 and 1976)
Including "F.I.O." Alternative, etc.

last of the loading ports, if more than one, it appears that further 205
performance of the contract will subject the Vessel, her Master and 206
crew or her cargo, to loss, damage or delay, the cargo shall be discharged, or if 207
the discharge has been commenced shall be completed, at any safe 208
port in vicinity of the port of discharge as may be ordered by the 209
Charterers, if no such orders shall be received from the Charterers 210
within 48 hours after the Owners have despatched a request by 211
telegram to the Charterers for the nomination of a substitute discharg- 212
ing port, the Owners shall be at liberty to discharge the cargo at 213
any safe port which they may, in their discretion, decide on and such 214
discharge shall be deemed to be due fulfilment of the contract of 215
affreightment. In the event of cargo being discharged at any such 216
other port, the Owners shall be entitled to freight as if the discharge 217
had been effected at the port or ports named in the Bill(s) of Lading 218
or to which the Vessel may have been ordered pursuant thereto. 219

(5) (a) The Vessel shall have liberty to comply with any directions 220
or recommendations as to loading, departure, arrival, routes, ports 221
of call, stoppages, destination, zones, waters, discharge, delivery or 222
in any other wise whatsoever (including any direction or recom- 223
mendation not to go to the port of destination or to delay proceeding 224
thereto or to proceed to some other port) given by any Government or 225
by any belligerent or by any organized body engaged in civil war, 226
hostilities or warlike operations or by any person or body acting or 227
purporting to act as or with the authority of any Government or 228
belligerent or of any such organized body or by any committee or 229
person having under the terms of the war risks insurance on the 230
Vessel, the right to give any such directions or recommendations. If, 231
by reason of or in compliance with any such direction or recom- 232
mendation, anything is done or is not done, such shall not be deemed 233
a deviation. 234

(b) If, by reason of or in compliance with any such directions or re- 235
commendations, the Vessel does not proceed to the port or ports 236
named in the Bill(s) of Lading or to which she may have been 237
ordered pursuant thereto, the Vessel may proceed to any port as 238
directed or recommended or to any safe port which the Owners in 239
their discretion may decide on and there discharge the cargo. Such 240
discharge shall be deemed to be due fulfilment of the contract of 241
affreightment and the Owners shall be entitled to freight as if 242
discharge had been effected at the port or ports named in the Bill(s) 243
of Lading or to which the Vessel may have been ordered pursuant 244
thereto. 245
246

(6) All extra expenses (including insurance costs) involved in discharg- 246
ing cargo at the loading port or in reaching or discharging the cargo 247
at any port as provided in Clauses 4 and 5 (b) hereof shall be paid 248
by the Charterers and/or cargo owners, and the Owners shall have 249
a lien on the cargo for all moneys due under these Clauses. 250

17. GENERAL ICE CLAUSE
Port of loading
251
252

(a) In the event of the loading port being inaccessible by reason of 253
ice when vessel is ready to proceed from her last port or at any 254
time during the voyage or on vessel's arrival or in case frost sets in 255
after vessel's arrival, the Captain for fear of being frozen in is at 256
liberty to leave without cargo, and this Charter shall be null and 257
void. 258

(b) If during loading the Captain, for fear of vessel being frozen in, 259
deems it advisable to leave, he has liberty to do so with what cargo 260
he has on board and to proceed to any other port or ports with 261
option of completing cargo for Owners' benefit for any port or ports 262
including port of discharge. Any part cargo thus loaded under this 263
Charter to be forwarded to destination at vessel's expense but 264
against payment of freight, provided that no extra expenses be 265
thereby caused to the Receivers, freight being paid on quantity 266
delivered (in proportion if lumpsum), all other conditions as per 267
Charter. 268

(c) In case of more than one loading port, and if one or more of the 269
ports are closed by ice, the Captain or Owners to be at liberty 270
either to load the part cargo at the open port and fill up elsewhere 271
for their own account as under section (b) or to declare the Charter 272
null and void unless Charterers agree to load full cargo at the open 273
port. 274

(d) This Ice Clause not to apply in the Spring. 275

Port of discharge
276

(a) Should ice (except in the Spring) prevent vessel from reaching 277
port of discharge Receivers shall have the option of keeping vessel 278
waiting until the re-opening of navigation and paying demurrage, or 279
of ordering the vessel to a safe and immediately accessible port 280
where she can safely discharge without risk of detention by ice. 281
Such orders to be given within 48 hours after Captain or Owners 282
have given notice to Charterers of the impossibility of reaching port 283
of destination. 284

(b) If during discharging the Captain for fear of vessel being frozen 285
in deems it advisable to leave, he has liberty to do so with what 286
cargo he has on board and to proceed to the nearest accessible 287
port where she can safely discharge. 288

(c) On delivery of the cargo at such port, all conditions of the Bill 289
of Lading shall apply and vessel shall receive the same freight as 290
if she had discharged at the original port of destination, except that 291
if the distance of the substituted port exceeds 100 nautical miles, the 292
freight on the cargo delivered at the substituted port to be increased 293
in proportion. 294

**RIDER TO CHARTER-PARTY M/V "RENATA"**
**DATED 06.06.2008**

**CLAUSE 18**
The Owners/Master of the vessel to tender by cable/telex/fax all notices to
-United Shipping Agency S.R.L. Constantza, e-mail: office@united.ro
notices of estimated time of arrival in the loading port on fixing and daily notices thereafter.

At port(s) of loading and discharging Master is to tender Notice of Readiness to Shippers/Receivers or their agents whether in port or not, whether in berth or not, whether in free pratique or not, whether customs cleared or not, via cable/radio/vhf/telex/e-mail, in writing, during office hours 08:00-17:00 hours Monday to Friday, within agreed laydays/cancelling at loading port, respectively during office hours 08:00-17:00 hours Monday to Friday at discharging port. Time to count as per clause 6, lines 92-95.

On sailing from loading port Master to cable Receivers indicated by Charterers and agents at discharging port time/date of sailing, quantity loaded as per Bills of Lading, estimated arrival draft discharging port and estimated time of arrival discharging port. Thereafter Master to cable Charterers through Messrs United Shipping Agency SRL Constantza, Receivers and agents discharging port 15, 10, 7, 5 days approximate and further 3, 2 and 1 day(s) definite time of arrival discharging port prior to vessel's arrival.

Should vessel be scheduled to call any port(s) en route from the loading and discharging ports as stipulated herein, for bunkering and/or any other ship's business, Master to advise Charterers/Brokers of such call in writing promptly and accurately, indicating the name(s) of the scheduled port(s), purpose and expected duration, estimated time of arrival and estimated time of sailing. Delays and/or changes in the duration, estimated time of arrival and estimated time of sailing to be advised by Master promptly directly to Charterers/Brokers and agents at discharging port.

**CLAUSE 19**
Owners undertake vessel is fully fitted, as far as vessel's description and plans allowing, for loading/carrying/discharging the cargo under this charter-party. Master must present the vessel for loading with clean holds, dry swept, free from remains of previous cargoes, free from rust/rust scaling holds including hatch covers, in proper conditions and in every respect ready for loading to satisfaction of Charterers/Shippers and/or independent surveyor prior to giving the Notice of Readiness. In this respect a representative of the inspection company nominated by Charterers will come on board at the moment of berthing to inspect the vessel, on the Charterers' account. In case of any disputes regarding hold cleanliness the opinion of an independent surveyor acceptable to both parties to apply and his decision to be binding.

**CLAUSE 20**
If the vessel was waiting on the roads, but at the moment of berthing it was found out, by the entitled inspection company's representative, that vessel is unfitted for loading, the time used for cleaning and making the vessel fit for loading will not count as laytime. Notice of Readiness to load may be rejected if Shippers find vessel's holds in improper condition. However, ultimately Owners to be responsible for vessel being clean and fit to load the cargo. If after berthing any cleaning and/or drying has to be done, same to be for Owners' account.

**CLAUSE 21**
Both in loading and discharging port(s), if vessel has to wait for loading respectively discharging berth, excepted periods to apply in the same way as if she was in the final loading respectively discharging berth.

**CLAUSE 22**
Unless otherwise provided in this charter-party the Owners will, upon giving the Notice of Readiness, declare in writing the exact quantity of cargo he requires within the limits stipulated herein.

At both loading and discharging ports weight to be determined by draft survey.

**CLAUSE 23**
All opening and closing of hatches to be arranged by Owners at their expenses and time, provided local regulations permit same, otherwise shorehands to be employed at Shippers/Receivers account and time. The vessel will be held responsible for any damage of the cargo, caused by water after loading on board.

**CLAUSE 24**
All ship's certificates must be valid, otherwise, any delay due to renewal to be for Owners' account. Vessel to have all international safety and trading documents valid for the duration of this charter-party. If loading or discharging is delayed due to non validity of ship's documents, such delay will be for Owners' account.

**CLAUSE 25**
In case of bulk cargoes to be loaded on board the vessel under this charter-party, it is agreed that Shippers/Charterers/Receivers to load and discharge the cargo free of risk and expenses to the vessel. The cargo shall be mechanically levelled and trimmed (or spout trimmed, if the loading facility is equipped as such) at Charterers risks and expense, but only in so far as the loading facilities can achieve. Any further levelling, trimming or filling required by the vessel or the Master shall be for Owners' risk and expenses and time used for same not to count as used laytime or time on demurrage.

Grab discharge clause - Vessel is guaranteed suitable for grab discharge as far as vessel's description and plans allowing. No cargo is to be loaded in deeptanks, bunkers or other compartments not accessible to grabs. Deep tanks, tunnels and all other provisions within vessel's holds are to be sheltered against damage by Receivers' grabs, failing which Owners are to be responsible for all consequences resulting therefrom.

Any contamination of the cargo loaded under this charter party is to be for Owners account and responsibility. Vessel to have floors suitable for loading/stowage and discharging by forklifts and corridors with height of minimum 2.2 meters.

**CLAUSE 26**
Deleted.

**CLAUSE 27**
In case loading is interrupted due to well established force majeure circumstances: Epidemics, Quarantine, Lock-outs, stoppage of Miners, Workmen, Lightermen, Tugboatmen, or other essentials to the Working, Carriage, Delivery, Shipment or Discharge of the said cargo whether partial or general, or Accidents and/or breakdowns at the Mines, at Shippers or Receivers Works, Landslips, Floods, Frost, Bad Weather, Interruption of River and/or Canal Navigation, Intervention of Sanitary, Customs, and/or other constituted Authorities, Partial or Total Stoppage on Rivers, Canals or on Railways, or any other cause owing to well substantiated and proven reasons beyond the Charterers possibilities of control (statement of Authorities attesting such periods will be presented by Charterers), the time corresponding to the period of interruption will not count as laytime or demurrage, as the case may be.

**CLAUSE 28**
Rate of loading - The cargo to be loaded and stowed by Charterers'/Shippers' stevedores free of expenses to the vessel at the rate of 3000 metric tons per weather working day, Saturdays, Sundays and holidays excepted even if used. Time from Friday 17:00 hours or from 13:00 hours on a day preceding a legal and/or local and/or religious holiday till 08:00 hours Monday or next working day after a holiday not to count even if used.

Rate of discharging - The cargo to be discharged by Charterers'/Receivers' stevedores free of expenses to the vessel at the rate of 2500 metric tons per weather working day, Saturdays, Sundays and holidays excluded even if used. Time from Friday 17:00 hours or from 13:00 hours on a day preceding a legal and/or local and/or religious holiday till 08:00 hours Monday or next working day after a holiday not to count even if used.

Draft survey: time used in carrying out a draft survey before commencement of loading or upon completion of loading is not to count as laytime. In the event of Shippers/Charterers or Master/Vessel/Owners requesting an additional draft survey, actual time used in carrying out such draft survey requested by the Shippers/Charterers shall count as laytime. Actual time used in carrying out a draft survey requested by the Master/Vessel/Owners shall not count as laytime. The Statement of Facts shall record the time used in effecting the draft survey(s) and at whose request each draft survey was carried out.

### CLAUSE 29
Deleted.

### CLAUSE 30
Freight USD          pmt free in out trimmed basis 1/1.

Freight payable 97.50% , less commissions, within 3 (three) banking days after signing and releasing Bills of Lading marked "Clean on board" and "Freight payable as per charter-party" to Owners' nominated bank account. Congenbill bills of lading to be used. Balance freight to be settled together with demurrage/despatch at both ends, within 15 days after completion of discharging and receipt/agreement of Owners, respectively Charterers laytime calculations, together with Notice of Readiness / Statement of Facts at both ends.

If Charterers require "Clean on board" Bills of Lading Master has the right, in conjunction with the cargo surveyor(s), to reject damaged cargo, while Charterers/Shippers to replace same with sound one.

If Charterers require "Freight prepaid" Bills of Lading, same to be kept by vessel's agents at loading port and to be released only upon Owners receive swift copy from Charterers' bank confirming freight has been irrevocably remitted to Owners nominated bank account.

Master to sign "Clean on Board" Bills of Lading marked "Freight payable as per charter-party" or "Freight prepaid", as required by Charterers.

If requested by Charterers, Owners agree to authorise Agents at loading port to issue, sign and release on their behalf the originals Bills of Lading as requested by Charterers, in accordance with the mate's receipts.

If requested by Charterers, Owners to instruct Master to carry 1/3 original Bill of Lading in ship's bag and to discharge/deliver the cargo at discharging port against this original Bill of Lading.

In case of non-availability of original Bills of Lading at discharging port, Owners to deliver the cargo to Receivers against Charterers Letter of Indemnity in Owners P+I wording dully signed/stamped by Charterers.

Freight is deemed earned upon shipment and signing Bills of Lading, discountless/non-returnable, vessel and/or cargo lost or not lost.

Owners' bank account to be advised.

### CLAUSE 31
Extra insurance on account of vessel's age, if any, to be for Charterers' account.

Taxes/dues on cargo/freight to be for Charterers' account at both ends.
Taxes/dues/charges/wharfages on vessel/crew/flag/Ownership and/or calculated on same to be for Owners' account at both ends.

### CLAUSE 32
Shifting from waiting berth and/or from anchorage to alongside loading or discharging berth or vice versa to be considered as part of the voyage and time/expenses for same to be for Owners account.

Shifting expenses from first loading respectively discharging berth to second loading respectively discharging berth, if required, to be for Charterers' account and time to count as laytime or demurrage.

Shifting by ropes alongside loading respectively discharging berth, to facilitate loading respectively discharging operations, if required, to be for Charterers' account and time to count as laytime or demurrage.

Any other shifting including shifting required by Port Authorities to be for the account of the party responsible for same.

## CLAUSE 33
Overtime to be for the account of party ordering same, except Officers' and Crew's overtime which always to be for Owners account.

Overtime ordered by port authorities to be for Charterers'/ Shippers'/ Receivers' account, except overtime for Officers and Crew which always to be for Owners' account.

## CLAUSE 34
The vessel to supply free of charge light as on board for night work, if required during the time of the day or night, Sundays and holidays included at both ports of loading and discharging.

Owners undertake to maintain vessel's loading and discharging gear in efficient working order and to give Charterers the privilege of working all hatches and holds at ports of loading and discharging at any time. Owners guarantee that the vessel has available on board valid up-to-date International Cargo Gear Certificate covering all vessel's gear and that all equipment, hatch covers, hold access arrangements and cranes/derricks are in good order in accordance with current international and local safety and health regulations in all countries where the vessel may call under this charter party.

Vessel to give free use of cargo gear winches and derricks capable of lifting capacity as per description clause and sufficient power to drive them day and night. Any delay in loading or discharging due to inefficiency or breakdown of derricks/cranes/winches not to count as laytime or demurrage pro rata according to the number of holds/hatches affected.

In case of crane/derricks/ winches breakdown, subject to Owners prior approval, Charterers/Shippers/ Receivers have the liberty to employ shore gear, charges for same to be for Owners account, in which case time will count.

If stevedores or other workmen are not permitted to work due to vessel's failure to comply with aforementioned regulations or failure to be in possession or recognised up-to-date certificates of efficiency, laytime/demurrage will be suspended until the vessel is again in full compliance with these regulations. Furthermore, all additional expenses incurred directly as a result of the above failure, including costs of labour either stood-off or additionally engaged, shall be for Owners' account.

## CLAUSE 35
Deleted.

## CLAUSE 36
Stevedores, although appointed and paid for by Charterers/Shippers/Receivers, are to be considered Owners' servants and shall load and discharge the cargo in accordance with Master's instructions and directions and under his responsibility. The Master to be responsible for a proper and seaworthy stowage.

Stevedoring damages to the vessel to be settled directly between Owners and respective Stevedores and any time occupied in repairing Stevedoring damage not to count as laytime. However, Charterers to do their utmost and to assist Owners in settlement of claims, if any disputed, but Charterers to be ultimately responsible for stevedores damages provided that the damage will be reported by the Master within 24 hours after occurrence.

## CLAUSE 37

Both-to-Blame collision clause, New Jason Clause, General Paramount Clause and P+I Bunkering Clause are all incorporated in this charter-party.

**CLAUSE 38**
Description of the vessel:
M/V RENATA  (EX - RUNNER)

| | |
|---|---|
| T Y P E | : MPPSE TWEEN CONTAINER VSL |
| BUILT | : 1979 |
| FLAG | : BAHAMAS |
| PORT OF REG | : NASSAU |
| CLASS | : L.R. +100 A1  + LMC |
| CALL SIGN | : C 6 H W 5 |
| P + I CLUB | : LONDON STEAMSHIP MUTUAL |

LOA / BEAM  : 149.80 M  / 22.86 M
S.DWT/DRAFT: 15,120 MT / 9.64 M
GRAIN / BALE: 21,908.9 / 20,146.3 CBM
GRT / NRT    : 11,200 / 6,713
HO / HA      : 4 / 7  (3 TWEEN HA - 1 SINGLE HA)
MCGREGOR HATCH COVERS FOLDING FLUSH TYPE - HYDRO DRIVEN CONSTANTS : 300 MT (EXCL F.W.)

GEAR : 6 VELLE SHIPSHAPE DERRICKS WITH 6 MTRS OUTREACH
HOLD NO.1: 1 D X 35 MT
HOLD NO.2: 2 D X 35 MT / COMBINED 60 MT
HOLD NO.3: 2 D X 50 MT / COMBINED 90 MT
HOLD NO.4: 1 D X 35 MT

GRAIN / CO2 / ELECTR.VENT.FITTED (12 ACPH BSS EMPTY HOLDS)

HATCHES & TWEEN DECKS DIMENSIONS

| | WEATHER DECK HATCHES | TWEEN DECK HATCHES |
|---|---|---|
| HOLD NO.1 SNGLE HATCH  SINGLE | 13.30 X 8.0 M | SINGLE 9.10 X 8.0 M |
| HOLD NO.2 TWEEN HATCH  EACH | 25.50 X 8.0 M | EACH 25.50 X 8.0 M |
| HOLD NO.3 TWEEN HATCH  EACH | 25.50 X 8.0 M | EACH 25.50 X 8.0 M |
| HOLD NO.4 TWEEN HATCH  EACH | 12.75 X 8.0 M | EACH 12.75 X 8.0 M |

NOMINAL CONTAINER CAPACITY : 597 TEUS
HOMOGEN CONTAINER CAPACITY : 440 TEUS @ 14 MT (SUB STABILITY)
REEFER PLUGS (FEMALE)    : 50 (380 V  AC 3 PHASE  60 HZ)

STRENGTHS
------------------
TANKTOP ALL HOLDS      : 10.26 MT/M2
TWEEN DECKS ALL HOLDS  : 3.00 MT/M2
MAIN DECK + HATCH COVERS : 1.75 MT/M2

CUBIC BREAKDOWN
------------------------------

| | GRAIN | BALE |
|---|---|---|
| NO.1 TWN DECK | 1,198.0 | 1,053.7 |
| LWR HOLD | 1,271.2 | 1,074.3 |
| T O T A L | 2,469.2 | 2,128.0 |
| | | |
| NO.2 TWN DECK | 2,981.2 | 2,786.5 |
| LWR HOLD | 4,811.1 | 4,365.4 |
| T O T A L | 7,792.3 | 7,151.9 |

```
NO.3 TWN DECK    3,001.8    2,815.2
LWR HOLD         4,857.8    4,541.0
T O T A L        7,859.6    7,356.2

NO.4 TWN DECK    1,519.4    1,425.5
LWR HOLD         2,268.4    2,084.7
T O T A L        3,787.8    3,510.2
-----------------------------------------------------
GRAND TOTAL     21,908.9   20,146.3
ALL DETS ABT/WOG
```

Attached vessel's description (17 pages) is to form part of this charter party.

Vessel is presently in Varna drydock completing repairs/survey, ETS Varna 10.06.2008, ETA Constantza 10.06.2008, wp+agw.

Owners guarantee vessel to be fully classed/p+I covered for the entire duration of the voyage undet this charter party.
Owners guarantee vessel is suitable for grab discharge, as far as vessel's description and plans allowing.

**CLAUSE 39**
The Pilot, Master, Officers and crew of the vessel and any towboat performing work on the vessel shall not be agents or employees of the Charterers/Shippers/Receivers and the Charterers/Shippers/Receivers shall not be liable for any loss, damage or claim resulting from, or arising out of negligence or error of any of them, while the vessel is proceeding to, or from, or lying at the place of loading or discharging.

**CLAUSE 40**
BIMCO standard ISM Clause - From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this charter party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this charter party, loss, damage, expense or delay caused by failure on the part of the Owners or "the Company" to comply with the ISM Code shall be for the Owners' account.

**CLAUSE 41**
Part cargo clause – deleted, not applicable.

**CLAUSE 42**
Owners to appoint agents at loading and discharging ports as nominated by Charterers, Owners paying customary disbursements account.

Agents at loading port:
United Shipping Agency Ltd
Constantza Port, Berth no. 31
Constantza 900900, Romania
Phone  : +40 241 672929 (7 lines)
Fax    : +40 241 612420
E-mail : office@united.ro

Agents at discharging port:
To be nominated in due time.

Owners to put agents to loading and discharging ports in necessary funds to cover vessel's expenses if required by such agents prior vessel's arrival. The Charterers are not responsible for the delay of the

vessel or any other circumstances in case of non-payment or late payment of disbursements expenses by the shipowners.

## CLAUSE 43
Demurrage USD 17,500.-per day pro-rata/half despatch on working time saved both ends.

Demurrage/despatch, if any, to be settled with balance freight, within 15 days after completion of discharge and upon receipt and agreement of Owners', respectively Charterers', laytime calculations together with faxed copies of original supporting documents (NOR + SOF) at both ends dully signed/stamped by Master/Agents.

## CLAUSE 44
BIMCO Dispute Resolution Clause, as per English Law, London Arbitration.

(a) This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

In cases where neither the claim nor any counterclaim exceeds the sum of USD 50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

(b) Notwithstanding the above, the parties may agree at any time to refer to mediation any difference and/or dispute arising out of or in connection with this Contract.

In the case of a dispute in respect of which arbitration has been commenced under the above, the following shall apply:-

(i) Either party may at any time and from time to time elect to refer the dispute or part of the dispute to mediation by service on the other party of a written notice (the "Mediation Notice") calling on the other party to agree to mediation.

(ii) The other party shall thereupon within 14 calendar days of receipt of the Mediation Notice confirm that they agree to mediation, in which case the parties shall thereafter agree a mediator within a further 14 calendar days, failing which on the application of either party a mediator will be appointed promptly by the Arbitration Tribunal ("the Tribunal") or such person as the Tribunal may designate for that purpose. The mediation shall be conducted in such place and in accordance with such procedure and on such terms as the parties may agree or, in the event of disagreement, as may be set by the mediator.

(iii) If the other party does not agree to mediate, that fact may be brought to the attention of the Tribunal and may be taken into account by the Tribunal when allocating the costs of the arbitration as between the parties.

(iv) The mediation shall not affect the right of either party to seek such relief or take such steps as it considers necessary to protect its interest.

(v) Either party may advise the Tribunal that they have agreed to mediation. The arbitration procedure shall continue during the conduct of the mediation but the Tribunal may take the mediation timetable into account when setting the timetable for steps in the arbitration.

(vi) Unless otherwise agreed or specified in the mediation terms, each party shall bear its own costs incurred in the mediation and the parties shall share equally the mediator's costs and expenses.

(vii) The mediation process shall be without prejudice and confidential and no information or documents disclosed during it shall be revealed to the Tribunal except to the extent that they are disclosable under the law and procedure governing the arbitration.

(Note: The parties should be aware that the mediation process may not necessarily interrupt time limits.)

**CLAUSE 45**
Owners guarantee vessel is classed Lloyd's Register highest or equivalent and is tight, staunch, strong and fully seaworthy, including hatchcovers which are in good conditions and watertight, and in every respect fitted, well and efficiently manned, stored and victualed, to perform the voyage under this charter party.

Owners guarantee that vessel is P + I covered insurance and with all class fully paid up. (Head Owners P+I club is London Steamship Mutual and is to supply certificate of entry of vessel if required by Charterers). If required by Charterers, Owners to supply certificate from Owners classification society confirming year of build and class.

Owners guarantee that both classification and protection and indemnity coverage will be fully maintained during all time under this charter-party. Should this classification and/or P+I coverage not be maintained during the specified period then Owners to be liable for any and all extra insurance, penalties or assessments directly resulting from the fact that the vessel's guaranteed classification and/or P+I coverage has not been maintained.

Further Owners agree that Charterers to benefit from Owners' P+I club coverage so far as club rules permit.

**CLAUSE 46**
For the purpose of performing draft surveys, the vessel is to furnish a certified calibration scale for all tanks, including fore and aft peak tanks, double bottom tanks, and deeptanks, if any. The vessel shall clearly cut and mark on shell plating Plimsol and other draft marks amidship, and draft marks at the bow and stern on port and starboard sides. Vessel is to furnish Charterers or their agent or surveyor a capacity plan, displacement scale, deadweight scale and any other hydrostatic information required by the draft surveyors. The Master must certify that all documents supplied are correct. At preliminary survey, the total quantities of ballast, bunkers, stores, etc. Are to reasonably agree with the deadweight indicated on the deadweight scale. Vessel's trim when conducting draft surveys to be within the range covered by calibrated trim tables. The Owners shall be liable for all loss, damage and expenses caused by the vessel or Master's failure to comply with this clause. Time lost by reason of such failure shall not count as used laytime or time on demurrage.

**CLAUSE 47**
BIMCO ISPS CLAUSE
a) i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel,

the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

b) i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and any information the Owners require to comply with the ISPS Code.

ii) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account and any delay caused by such failure shall be compensated at the demurrage rate.

c) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code, the following shall apply:

i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code.

ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if the Vessel is on laytime or demurrage. If the delay occurs before laytime has started or after laytime or time on demurrage has ceased to count, it shall be compensated by the Charterers at the demurrage rate.

d) Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

e) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

**CLAUSE 48**
In the event of a boycott or other difficulties arising due to vessel's flag, time lost through such causes shall not count as laytime or time on demurrage. This clause is applicable in the event of labour boycott or any other discrimination against the ship because of her registry and/or crew and/or terms on which the crew is employed.

**CLAUSE 49**
Deleted.

**CLAUSE 50**
Terms and conditions of this Charter-Party including name of Charterers and Owners to be treated strictly private and confidential and are not to be disclosed to any third party.


OWNERS                                                    CHARTERERS

Adopted for the Documentary Committee of the General Council of British Shipping, London and the Documentary Committee of The Japan Shipping Exchange, Inc., Tokyo

| 1. Shipbroker | RECOMMENDED THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976) INCLUDING "F.I.O." ALTERNATIVE, ETC. (To be used for trades for which no approved form is in force) CODE NAME: "GENCON" Part I |
|---|---|
| United Shipping Agency Ltd Constantza Port, Berth no.31 P.O.Box 102, Constanta 900900 - Romania Phone:0241-672929, Fax:612420, e-mail: office@usited.ro | 2. Place and date Constantza, 09.06.2008 |
| 3. Owners/Place of business (Cl. 1) Head Owners Messrs. Oceanstar Management Inc. 18 G. Lambraki Street, Glyfada 16674, Athens, Greece Disponent Owners Messrs. Bristol Marine Co Ltd 80, Broadway Street, Monrovia, Liberia | 4. Charterers/Place of business (Cl. 1) Messrs. Interagro S.A. 1-3 Verii Street, Sector 2 Buchrarest, Romania |
| 5. Vessel's name (Cl. 1) MV RENATA | 6. GRT/NRT (Cl. 1) 11200 / 8713 |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1) summer dwt 15120 metric tons | 8. Present position (Cl. 1) in Varna drydock completing repairs/survey |
| 9. Expected ready to load (abt.) (Cl. 1) 09.06.2008 | |
| 10. Loading port or place (Cl. 1) one/two safe berth(s) always afloat Constantza, Romania. | 11 Discharging port or place (Cl. 1) one/two safe berth(s) always afloat Mombasa, Kenya, where Owners confirm vessel's arrival draft with 13750MT on board around 9.55meters |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1) 12,500mt 10% more or less in Owners option of bulk calcium ammonium nitrate stowing about 40 cubic feet / metric ton, without guarantee Owners confirm their intention is to load 13750metric tons | |
| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1) see clause 30. | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4) see clause 30. |
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless) free in out trimmed | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) a) Laytime for loading see clauses 18 and 28. |
| 17. Shippers (state name and address) (Cl. 6) | b) Laytime for discharging see clauses 18 and 28. |
| | c) Total laytime for loading and discharging |
| 18. Demurrage rate (loading and discharging) (Cl. 7) see clause 43. | 19. Cancelling date (Cl. 10) 12.06.2008 |
| 20. Brokerage commission and to whom payable (Cl. 14) 2.50% address commission to Charterers + 1.25% commission to United Shipping Agency on freight/dead freight/demurrage. | |
| 21. Additional clauses covering special provisions, if agreed. additional clauses from 19 to 50, both inclusive, as attached herewith, are deemed to be incorporated and form part of this charter party | |

Copyright, published by The Baltic and International Maritime Conference (BIMCO), Copenhagen

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

b) i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and any information the Owners require to comply with the ISPS Code.

ii) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account and any delay caused by such failure shall be compensated at the demurrage rate.

c) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code, the following shall apply:

i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code.

ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if the Vessel is on laytime or demurrage. If the delay occurs before laytime has started or after laytime or time on demurrage has ceased to count, it shall be compensated by the Charterers at the demurrage rate.

d) Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

e) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

CLAUSE 48
In the event of a boycott or other difficulties arising due to vessel's flag, time lost through such causes shall not count as laytime or time on demurrage. This clause is applicable in the event of labour boycott or any other discrimination against the ship because of her registry and/or crew and/or terms on which the crew is employed.

CLAUSE 49
Deleted.

CLAUSE 50
Terms and conditions of this Charter-Party including name of Charterers and Owners to be treated strictly private and confidential and are not to be disclosed to any third party.

# Exhibit B

| Date | 9TH June 2008 |
|---|---|
| Vessel | M/V RENATA |
| Operation | Loading |
| Cargo | Bulk CAN |
| Quantity | 13.750 mts |

We, BRISTOL MARINE CO LTD  hereby appoint Messrs United Shipping Agency Srl to attend as agents of the above mentioned vessel during her present call at Constantza port.

Instruction for issuing / sending the final D/A

| Final D/A must be invoiced to: | BRISTOL MARINE CO LTD |
|---|---|
| Invoice Address | 80, Broadway Street<br>Monrovia - Liberia |
| VAT registration number | |
| Send Final D/A to Messrs | BML CHARTERING, ATHENS, GREECE |
| Full postal address where the Final D/A must be sent | BML CHARTERING,<br>11, Argonafton Street and Korai<br>Ilioupolis 163 46<br>Athens - Greece |
| Person in charge and telephone | Cpt Dimitri Kastellanos<br>Ph.No. 6944501620 |
| Send by (please delete as appropriate) | Normal mail |

Other instructions referring issuing the Final D/A:

Stamp and signature



From: calder@otenet.gr
To: office@united.ro
Date: Fri, 27 Jun 2008 12:09:40 +0300

FM: CALDER SEACARRIER CORP.
   Athens-Greece
   tel: +30210-9659910 fax: +30210-9659466
   E-Mail: calder@otenet.gr

27 Jun 2008-12:09. Ref:65154-U02


FM: CALDER SEACARRIER CORP.
   Athens-Greece
   tel: +30210-9659910 fax: +30210-9659466
   E-Mail: calder@otenet.gr

10 Jun 2008-11:54. Ref:64814-U01

to:United Shipping Agency Ctza

att:mr Mihai Felescu

re mv Renata

-
thanks yrs,
Kindly be adv that we hve now agreed with BRISTOL MARINE that they provide you with
instructions regarding the signing and releasing of the bs/l.

best rgrds

ops dept/

FM: CALDER SEACARRIER CORP.
   Athens-Greece
   tel: +30210-9659910 fax: +30210-9659466
   E-Mail: calder@otenet.gr

9 Jun 2008-18:17. Ref:64804-U01

To:United Shipping Agency Ltd Ctza
Cc:BRISTOL MARINE
:Italrom Ctza/Dan


Re: MV Renata at Ctza
-
Pls note that we are the disponent owners of the a/m vsl and we have fixed
account BRISTOL MARINE CO LTD, of Monrovia, Liberia a cgo of 13.750 mts of bulk

- 1 -

Calcium
Ammonium Nitrate to be loaded from Constantza to Mombasa (Kenya) basis free
d/as.
(Messrs BRISTOL MARINE are responsible to pay the vsls d/as at Ctza.)

Pls note vsl's eta Ctza 11th June wp agw.

Kindly keep us posted on a daily bss with the vsl's movements/loading
progress at Ctza.
Mtime kindly let us hve by return the proforma b/l to be used.
It is needless to advise you that in case that the bs/l are marked 'freight
prepaid' then same will remain under yr custody and shouldnot be released
to any party pending our written instructions regarding the bs/l' release.
Fyg we will also send our supercargo to supervise the vsls loading
operations.


Tks/brgrds
Ops Dept.




[Message sent via SOFTWAY Communication Program]

# Exhibit C

**Message MT 103**

Created 19.06.2008 16:35:15  Status : K  (ACK : 19/06/2008 16:36)  Addressee : INGBROBUXXX ING BANK N.V., BUCHAREST BRANCH

| Tag | Field Name | Content |
|---|---|---|
| 20 | SENDER REFERENCE | TR017149363X1100 |
| 23B | BANK OPERATION CODE | CRED |
| 32A | VALUE DATE, CURR., AMOUNT | 080620 |
| | | USD |
| | | 50456,9 |
| 33B | CURRENCY/INSTRUCTED AMOUNT | USD |
| | | 50456,9 |
| 50K | INSTRUCTING PARTY | /CH5908686001081173001/17149363 |
| | | INTERAGRO SA |
| | | 1-3 VERII STREET |
| | | SECTOR 2 |
| | | BUCHAREST/RO |
| 53A | SENDER' S CORRESPONDENT | BNPA |
| | | US |
| | | 3N |
| 54A | RECEIVER' S CORRESPONDENT | CHAS |
| | | US |
| | | 33 |
| 59 | BENEFICIARY | /RO56INGB0004003164924014 |
| | | UNITED SHIPPING AGENCY SRL |
| | | CONSTANZA-ROMANIA |

THIS IS NOT A STATEMENT OF ACCOUNT. THIS IS AN INTERNAL DOCUMENT FOR YOUR INFORMATION ONLY, WITHOUT ANY COMMITMENT FOR THE BANK

70    REMITTANCE INFORMATION    MV RENATA PI NO.1440+
                                INV NO CT USA 1439

71A   DETAILS OF CHARGES        OUR

THIS IS NOT A STATEMENT OF ACCOUNT. THIS IS AN INTERNAL DOCUMENT FOR YOUR INFORMATION ONLY, WITHOUT ANY COMMITMENT FOR THE BANK

# BRISTOL MARINE CO LTD.

## MONROVIA - LIBERIA

18th June, 2008

Messrs
INTERAGRO S.A. -- BUCHAREST - ROMANIA

### FREIGHT STATEMENT
=====================

MV RENATA -- C/P DD 06.06.2008

| | | | | |
|---|---|---|---|---|
| - FREIGHT: 13.750 MTS at USD 120.50 pmt | | | | USD 1.656.875,00 |
| 97.5pct THEREOF | | | | USD 1.615.453,13 |
| - LESS: 2.5pct ADDRESS COMMISSIONS | | USD 41.421,87 | | |
| 1.25pct COMMISSION TO UNITED | | | | |
| SHIPPING AGENCY | | USD 20.710,94 | | |
| PROFORMA D/AS CONSTANTA | | USD 29.745,96 | | |
| | | ------------------- | | ----------------------- |
| | TOTAL | USD 91.878,77 | USD | 91.878,77 |
| - BALANCE IN OWNERS FAVOUR | | | | USD 1.523.574,36 |
| | | | | =========== |

(USDOLLARS ONE MILLION FIVE HUNDRED TWENTY THREE THOUSAND FIVE HUNDRED
SEVENTY FOUR AND 36/100 ONLY)

OWNERS BANK/ACCOUNT AS FOLLOWS:

**PIRAEUS BANK**
**VOULA BRANCH (2020)**
**ATHENS -- GREECE**

**ACCOUNT NO.: 5020-034653-151**
**SWIFT NO.:    PIRBGRAA**
**IBAN:         GR32 0172 0200 0050 2003 4653 151**
**FAVOUR OF:   BRISTOL MARINE CO LTD**
**REF:          FREIGHT MV RENATA**

**CORRESPONDING BANK IN U.S.A.: BANK OF NEW YORK**
**SWIFT: IRVTUS**

BRISTOL MARINE CO LTD

  

# United Shipping Agency Ltd.

Constantza Port , Berth no. 31     Tel : +40 241 672929     V.A.T. RO4084594
Constantza 900900 , Romania     Fax:  +40 241 612420
Registered capital 18 731 770 ron

**Buyers**

BRISTOL MARINE CO LTD

80,BROADWAY STREET

MONROVIA
LIBERIA
C/O INTERAGRO U.K.

## PROFORMA INVOICE

No. :  **1440**

Date:  6/19/2008

V.A.T.   Scutit cu drept de deducere

| Item Nr. crt. | Services rendered Denumire produse sau servicii | M.U. U.M. | Quantity Cantitate | Price Pret unitar fara T.V.A. | Total Valoare | V.A.T. Valoare T.V.A. |
|---|---|---|---|---|---|---|
| 1 | PROFORMA D/AS CONSTANTA 29.745,96 usd x 2.3660 lei/usd = 70.378,94 lei | | 1 | 29,745.96 | 29,745.96 | 0.00 |

say twenty nine thousand seven hundred forty five and 0.96 usd only

| | | |
|---|---|---|
| Total | 29,745.96 | USD |
| Total V.A.T. | 0.00 | USD |
| Total amount | **29,745.96** | **USD** |

**Please remit the above amount, to :**
**ING BANK - suc.Constanta**
**RO56 INGB 0004 0031 6492 4014 - USD**

**Beneficiary : United Shipping Agency SRL,**
**Constantza, Romania**
**VAT no. RO 4084594**
**Ref:**     **MV RENATA**



 **United Shipping Agency Ltd.**  

Constanta Port, Berth no. 31    Tel : +40 241 672929    V.A.T. RO4084594
Constanzta 900900 , Romania    Fax: +40 241 612420
Registered capital 18 731 770 ron

**Buyers**

BRISTOL MARINE CO LTD

80,BROADWAY STREET

MONROVIA
LIBERIA
C/O INTERAGRO U.K.

# INVOICE

No. : **CT USA 1439**

Date: 6/19/2008

V.A.T.   Scutit cu drept de deducere

| Item Nr. crt. | Services rendered Denumire produse sau servicii | M.U. U.M. | Quantity Cantitate | Price Pret unitar fara T.V.A. | Total Valoare | V.A.T. Valoare T.V.A. |
|---|---|---|---|---|---|---|
| 1 | BROKERAGE COMMISSION (COMISION BROKERAJ) MV RENATA 13.750 MTS X 120.50 USD/MT = 1.656.875,00 USD COMMISSION 1.25 20,710.94 usd x 2.3660 lei/usd = 49,002.08 lei | | 1 | 20,710.94 | 20,710.94 | 0.00 |

say twenty thousand seven hundred ten and 0.94 usd only

| | | |
|---|---|---|
| Total | 20,710.94 | USD |
| Total V.A.T. | 0.00 | USD |
| Total amount | **20,710.94** | **USD** |

**Please remit the above amount, to :**

**ING BANK - suc.Constanta**

**RO56 INGB 0004 0031 6492 4014 - USD**

**Beneficiary : United Shipping Agency SRL,**

        **Constantza, Romania**

        **VAT no. RO 4084594**

**Ref:**     **BROKERAGE COMMISSION MV RENATA**



# Exhibit D

Page 2

CODE NAME:"CONGENBILL". EDITION 1994

Owner:  VILARA MARITIME CO. LTD. MONROVIA, LIBERIA

B/L No.  2

Shipper
INTERAGRO SA.
1-3 VERII STREET SECTOR 2
BUCHAREST ROMANIA
TEL 40212103700
FAX 40212104805

**OCEAN  BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES

Reference No.

Consignee
TO THE ORDER OF
BNP PARIBAS (SUISSE) S.A
GENEVA SWITZERLAND

Notify address
KENYA COMMERCIAL BANK LIMITED.
TRADE FINANCE CENTRE A/C
NATIONAL CEREALS AND PRODUCE BOARD
P.O. BOX 30586
NAIROBI KENYA

Copy Not
Negotiable

| Vessel | Port of loading |
| MV RENATA | CONSTANZA PORT ROMANIA |

Port of discharge
MOMBASA PORT, KENYA

| Shipper's description of goods | Net weight |
| CALCIUM AMMONIUM NITRATE (CAN) FERTILISER GRADE GRANULAR, IN BULK | 4,206.997 METRIC TONS |

CLEAN ON BOARD
FREIGHT PREPAID
IDF NO. E0805051894
L/C REF. NO. LCRO86017087207C

(of which   NIL   on deck at Shipper's risk: the Carrier not
being responsible for loss or damage howsoever arising)

Freight payable as per
CHARTER-PARTY dated.................................................................

SHIPPED at the Port of  Loading  in apparent good  order and
condition on board  the  Vessel  for carriage to the  Port
of Discharge or so near thereto as  she  may safely get the goods
specified  above.

FREIGHT ADVANCE.
Received on account of freight:

Weight,  measure,  quality,  condition,  contents  and  value
unknown.
IN WITNESS whereof the Master or Agent of the said  Vessel  has signed
the number of Bills  of  Lading  indicated below all of this tenor and date,
any one of which being  accomplished  the others  shall  be  void.

.............................................................................................

Time used for loading ........................ days ........................... hours

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue
CONSTANZA PORT ROMANIA
                                    18.JUN, 08 |
| Number of original Bs/L

3(THREE) | Signature
MASTER OF MV RENATA
CAPT. ROMKA MYKOLA |

Page 2

CODE NAME:"CONGENBILL". EDITION 1994
Owner:  VILARA MARITIME CO. LTD. MONROVIA, LIBERIA

B/L No.  1

Shipper
INTERAGRO SA.
1-3 VERII STREET SECTOR 2
BUCHAREST ROMANIA
TEL 40212103700
FAX 40212104805

**OCEAN BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES

Reference No.

Consignee
TO THE ORDER OF
BNP PARIBAS (SUISSE) S.A
GENEVA SWITZERLAND

Notify address
KENYA COMMERCIAL BANK LIMITED.
TRADE FINANCE CENTRE A/C
NATIONAL CEREALS AND PRODUCE BOARD
P.O. BOX 30586
NAIROBI KENYA

Copy Not
Negotiable

| Vessel | Port of loading |
|---|---|
| MV RENATA | CONSTANZA PORT ROMANIA |

Port of discharge
MOMBASA PORT, KENYA

Shipper's description of goods

Net weight

CALCIUM AMMONIUM NITRATE (CAN) FERTILISER GRADE GRANULAR, IN BULK

9,543.003 METRIC TONS

CLEAN ON BOARD
FREIGHT PREPAID
IDF NO. E0805051894
L/C REF. NO. LCRO86017087207C

(of which   NIL   on deck at Shipper's risk: the Carrier not
being responsible for loss or damage howsoever arising)

Freight payable as per
CHARTER-PARTY dated............................................................

FREIGHT ADVANCE.
Received on account of freight:

...............................................................................

Time used for loading ........................ days ........................... hours

S H I P P E D  at the Port of Loading in apparent good order and
          condition on board the Vessel for carriage to the Port
of Discharge or so near thereto as she may safely get the goods
specified above.
Weight, measure, quality, condition, contents and value
unknown.
IN WITNESS whereof the Master or Agent of the said Vessel has signed
the number of Bills of Lading indicated below all of this tenor and date,
any one of which being accomplished the others shall be void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue |
|---|---|
| | CONSTANZA PORT ROMANIA |
| | 18.JUN, 08 |
| Number of original Bs/L | Signature |
| 3(THREE) | MASTER OF MV RENATA |
| | CAPT. ROMKA MYKOLA |

**Exhibit E**

**Mihai Felescu**

| | |
|---|---|
| **From:** | "Johnny CHRISTENSEN" <Johnny.CHRISTENSEN@unishipping.com> |
| **To:** | "Madalina Bratu" <madalina.bratu@united.ro>; "1 usa office" <office@united.ro>; "Mail Unishipping" <mail@unishipping.com> |
| **Sent:** | Wednesday, June 18, 2008 10:54 AM |
| **Subject:** | RE: MV RENATA - BILLS OF LADING |

TO UNITED SHIPPING AGENCY
FM UNISHIPPING

ATTN MADALINA BRATU

RE MV RENATA / CALDER SEACARRIERS
---
CONFIRM RECEIPT OF THE DRAFT OF BILLS OF LADING.

PLEASE DO NOT   REPEAT   DO NOT RELEASE SAME, KEEP SAME IN YOUR
CUSTODY UNTIL FURTHER NOTICE FROM THIS OFFICE.

ALSO WILL NEED COPY OF THE MATE'S RECEIPT IN ORDER CHECK ANY REMARKS
MADE BY SHIP'S OFFICERS

PLEASE URGENTLY CONFIRM THAT YOU WILL KEEP B/L IN YOUR CUSTODY

BEST REGARDS/JC
AS AGENTS FOR BAJA FERRIES

---

**From:** Madalina Bratu [mailto:madalina.bratu@united.ro]
**Sent:** Wednesday, June 18, 2008 9:25 AM
**To:** Johnny CHRISTENSEN; 1 usa office; Mail Unishipping
**Subject:** Re: MV RENATA - BILLS OF LADING

Dear Sirs,

Thanks for your message below.

Please kindly find attached herewith the drafts of the Bills of lading.

Best regards,
Madalina Bratu
-----------------------------------------
**United Shipping Agency Srl**
Constantza Port, Berth no. 31
Constantza 900900, Romania
Tel +40 241 672929, Fax +40 241 612420
Cell +40 723 562562, Email office@united.ro

----- Original Message -----
**From:** Johnny CHRISTENSEN
**To:** Anca Tureac ; Mail Unishipping
**Cc:** oruano@bajaferriesusa.com
**Sent:** Tuesday, June 17, 2008 7:14 PM

02.08.2008

**Subject:** MV RENATA - BILLS OF LADING

TO UNITED SHIPPING AGENCY
FM UNISHIPPING
CC BAJA FERRIES

RE MV RENATA

---

PLEASE NOTE THAT UNISHIPPING NEED TO SEE A COPY OF THE BILL(S) OF LADING
WHICH WILL BE ISSUED PRIOR TO ANYONE SIGNING/RELEASING SAME.

PLEASE CONFIRM THAT THIS WILL BE DONE, THANKS A LOT

BRGDS/JC
AS AGENTS FOR BAJA FERRIES

---------------- Original Message ---------------
From: "Mihai Felescu" <mihai@united.ro>
To: "Johnny CHRISTENSEN" <Johnny.CHRISTENSEN@unishipping.com>
Cc: "1 usa office" <office@united.ro>, "Mail Unishipping" <mail@unishipping.com>
Date: 18.06.2008 1:08:01 PM
Subject: Re: RENATA - URGENT/URGENT
----------------------------------------------------

Dear Sirs,

Thanks very much for your below instructions, which are duly noted and we confirm acting
accordingly.

Best regards,
Mihai Felescu

**United Shipping Agency Srl**
Constantza Port, Berth no. 31
Constantza 900900, Romania
Tel +40 241 672929, Fax +40 241 612420
Cell +40 722 666112, Email office@united.ro
Skype: mihai.felescu

----- Original Message -----

**From:** Johnny CHRISTENSEN
**To:** Mihai Felescu
**Cc:** 1 usa office ; Mail Unishipping
**Sent:** Wednesday, June 18, 2008 1:02 PM
**Subject:** RE: RENATA - URGENT/URGENT

TO UNITED SHIPPING AGENCY

FM UNISHIPPING

CC BAJA FERRIES

ATT MIHAI FELESCU

RE MV RENATA

----

WE – AS DISPONENT OWNERS – OF THE M/V RENATA DO HAVE THE FINAL WORD AND

AGENTS MUST OBEY TO OUR ORDERS ANDOR DIRECTIONS IN RESPECT OF THE

DOCUMENTATION MADE/ISSUED.

CALDER SEACARRIERS ARE PAYING – AS PART OF OUR CONTRACT – THE D/A BUT THIS

DOES NOT MEAN THAT IT RELEASES YOU NOR YOUR COMPANY TO FOLLOW ANY

ORDERS ANDOR DIRECTIONS FROM OUR COMPANY.

CAN YOU PLEASE CONFIRM BY RETURN, THAT THE BILLS OF LADING WILL REMAIN

IN YOUR CUSTODY UNTIL FURTHER NOTICE GIVEN FROM OUR OFFICE.

FAILING SAME, WE WILL ORGANIZE THAT THE BILLS OF LADING IS BEING PICKED UP

BY A PERSON OF OUR TRUST.

IF YOU FAIL IN FOLLOWING OUR ORDERS ANDOR DIRECTIONS, WE WILL UNFORTUNATELY

HAVE TO TAKE APPROPRIATE STEPS TO PROTECT OUR INTEREST.

PLEASE CONFIRM RECEIPT OF THIS MESSAGE AND THAT YOU WILL FOLLOW OUR

INSTRUCTIONS.

BRGDS/JC

AS AGENTS FOR BAJA FERRIES

---

**From:** Mihai Felescu [mailto:mihai@united.ro]
**Sent:** Wednesday, June 18, 2008 11:18 AM
**To:** Johnny CHRISTENSEN
**Cc:** 1 usa office; Mail Unishipping
**Subject:** Re: RENATA - URGENT/URGENT

Dear Sirs,

Please kindly note we have been appointed as agents through Messrs Calder Seacarriers,
consequently your instructions regarding the Bills of Lading should be addressed through your
contractual party, in order to avoid missunderstandings.

Pleased to hear,

Best regards,

Mihai Felescu

_____

**United Shipping Agency Srl**

Constantza Port, Berth no. 31

Constantza 900900, Romania

Tel +40 241 672929, Fax +40 241 612420

Cell +40 722 666112, Email office@united.ro

Skype: mihai.felescu

----- Original Message -----

**From:** Johnny CHRISTENSEN

**To:** Anca Tureac

**Cc:** 1 usa office ; Mail Unishipping

**Sent:** Wednesday, June 18, 2008 11:40 AM

**Subject:** RE: RENATA - URGENT/URGENT

ANCA/JOHNNY

THANKS YOURS BELOW

RE BILLS OF LADING –

YOU ARE HEREWITH INSTRUCTED TO KEEP THE BILLS OF LADING UNDER

YOUR CUSTODY UNTIL FURTHER NOTICE FROM US. SHOULD YOU FAIL NOT

TO FOLLOW OUR ORDERS AND INSTRUCTIONS, OWNERS WILL UNFORTUNATELY

HAVE TO KEEP YOU AND YOUR OFFICE FULLY RESPONSIBLE.

PLEASE CONFIRM THAT THIS MESSAGE IS CLEAR TO YOU AND THAT YOU

WILL SUCH INSTRUCTIONS BY RETURN – THANKS

BRGDS

---

**From:** Anca Tureac [mailto:anca.tureac@united.ro]
**Sent:** Wednesday, June 18, 2008 10:34 AM
**To:** Johnny CHRISTENSEN
**Cc:** 1 usa office
**Subject:** Re: RENATA - URGENT/URGENT

Dear Sirs,

Please kindly note the port D/As have already been arranged through Messrs Bristol Marine.

Regarding Bills of Lading reverting after checking with Shippers and with Messrs Calder Seacarriers / Messrs Bristol Marine.

Best regards,

Anca Tureac

---

**United Shipping Agency Srl**

Constantza Port, Berth no. 31

Constantza 900900, Romania

Tel +40 241 672929, Fax +40 241 612420

Cell +40 723 599088, Email office@united.ro

----- Original Message -----

**From:** Johnny CHRISTENSEN

**To:** Anca Tureac ; Mail Unishipping

**Sent:** Wednesday, June 18, 2008 10:51 AM

**Subject:** RENATA - URGENT/URGENT

TO UNIITED SHIPPING AGENCY

FM UNISHIPPING

RE RENATA – ACCOUNT CALDER SEACARRIERS

---

STILL MISSING YOUR CONFIRMATION THAT NO REPEAT NO BILLS OF LADING WILL BE

ISSUED/RELEASED WITHOUT OUR PRIOR CONSENT.

FURTHER PLEASE CONFIRM THAT NO OUTSTANDINGS ON D/A WILL BE CLAIMED AGAINST

THE OWNERS OF THE VESSEL AND SAME WILL BE COVERED BY THE CHARTERERS

MESSRS CALDER SEACARRIERS, THANKS

BEST REGARDS/JC

AS AGENTS FOR BAJA FERRIES

------------- Original Message Ends ------------

From: "Johnny CHRISTENSEN" <Johnny.CHRISTENSEN@unishipping.com>
To: "Mihai Felescu" <mihai@united.ro>
Date: Fri, 20 Jun 2008 17:30:12 +0200
Cc: "1 usa office" <office@united.ro>,
 "Mail Unishipping" <mail@unishipping.com>,
 <oruano@bajaferriesusa.com>
Subject: RE: RENATA - URGENT/URGENT

TO UNITED SHIPPING AGENCY

FM UNISHIPPING

CC BAJA FERRIES


ATT MR FELESCU


THANKS YOUR BELOW MESSAGE. CAN NOT  REPEAT  CAN NOT GIVE YOU AUTHORITY

TO RELEASE BILLS OF LADING YET AS FREIGHT NOT ON OWNERS ACCOUNT.


KEEP TIGHT TO THEM AND DO ONLY RELEASE SAME UPON OUR WRITTEN
CONFIRMATION

THAT SAME CAN BE RELEASED.


BRGDS


-------

From: Mihai Felescu [mailto:mihai@united.ro]
Sent: Friday, June 20, 2008 5:29 PM
To: Johnny CHRISTENSEN
Cc: 1 usa office; Mail Unishipping
Subject: Re: RENATA - URGENT/URGENT


Dear Sirs,


Please kindly advise if original Bills of Lading can now be released to
the shippers (we understood that freight has been already paid / funds
already received).

- 1 -

Thanks in advance your prompt reply.


Awaiting yours,


Best regards,

Mihai Felescu

_____

United Shipping Agency Srl

Constantza Port, Berth no. 31

Constantza 900900, Romania

Tel +40 241 672929, Fax +40 241 612420

Cell +40 722 666112, Email office@united.ro <mailto:office@united.ro>

Skype: mihai.felescu

    ----- Original Message -----

    From: Johnny CHRISTENSEN <mailto:Johnny.CHRISTENSEN@unishipping.com>

    To: Mihai Felescu <mailto:mihai@united.ro>

    Cc: 1 usa office <mailto:office@united.ro> ; Mail Unishipping <mailto:mail@unishipping.com>

    Sent: Wednesday, June 18, 2008 1:02 PM

    Subject: RE: RENATA - URGENT/URGENT


    TO UNITED SHIPPING AGENCY

    FM UNISHIPPING

    CC BAJA FERRIES


    ATT MIHAI FELESCU


    RE MV RENATA

----

WE - AS DISPONENT OWNERS - OF THE M/V RENATA DO HAVE THE FINAL WORD AND

AGENTS MUST OBEY TO OUR ORDERS ANDOR DIRECTIONS IN RESPECT OF THE

DOCUMENTATION MADE/ISSUED.


CALDER SEACARRIERS ARE PAYING - AS PART OF OUR CONTRACT - THE D/A BUT THIS

DOES NOT MEAN THAT IT RELEASES YOU NOR YOUR COMPANY TO FOLLOW ANY

ORDERS ANDOR DIRECTIONS FROM OUR COMPANY.


CAN YOU PLEASE CONFIRM BY RETURN, THAT THE BILLS OF LADING WILL REMAIN

IN YOUR CUSTODY UNTIL FURTHER NOTICE GIVEN FROM OUR OFFICE.


FAILING SAME, WE WILL ORGANIZE THAT THE BILLS OF LADING IS BEING PICKED UP

BY A PERSON OF OUR TRUST.


IF YOU FAIL IN FOLLOWING OUR ORDERS ANDOR DIRECTIONS, WE WILL UNFORTUNATELY

HAVE TO TAKE APPROPRIATE STEPS TO PROTECT OUR INTEREST.


PLEASE CONFIRM RECEIPT OF THIS MESSAGE AND THAT YOU WILL FOLLOW OUR

INSTRUCTIONS.


BRGDS/JC

AS AGENTS FOR BAJA FERRIES

- 3 -

From: Mihai Felescu [mailto:mihai@united.ro]
Sent: Wednesday, June 18, 2008 11:18 AM
To: Johnny CHRISTENSEN
Cc: 1 usa office; Mail Unishipping
Subject: Re: RENATA - URGENT/URGENT


Dear Sirs,


Please kindly note we have been appointed as agents through
Messrs Calder Seacarriers, consequently your instructions regarding the
Bills of Lading should be addressed through your contractual party, in
order to avoid missunderstandings.


Pleased to hear,


Best regards,

Mihai Felescu

_____

United Shipping Agency Srl

Constantza Port, Berth no. 31

Constantza 900900, Romania

Tel +40 241 672929, Fax +40 241 612420

Cell +40 722 666112, Email office@united.ro
<mailto:office@united.ro>

Skype: mihai.felescu


----- Original Message -----

From: Johnny CHRISTENSEN

<mailto:Johnny.CHRISTENSEN@unishipping.com>

To: Anca Tureac <mailto:anca.tureac@united.ro>

Cc: 1 usa office <mailto:office@united.ro> ; Mail
Unishipping <mailto:mail@unishipping.com>

Sent: Wednesday, June 18, 2008 11:40 AM

Subject: RE: RENATA - URGENT/URGENT


ANCA/JOHNNY


THANKS YOURS BELOW


RE BILLS OF LADING -

YOU ARE HEREWITH INSTRUCTED TO KEEP THE BILLS OF LADING
UNDER

YOUR CUSTODY UNTIL FURTHER NOTICE FROM US. SHOULD YOU
FAIL NOT

TO FOLLOW OUR ORDERS AND INSTRUCTIONS, OWNERS WILL
UNFORTUNATELY

HAVE TO KEEP YOU AND YOUR OFFICE FULLY RESPONSIBLE.


PLEASE CONFIRM THAT THIS MESSAGE IS CLEAR TO YOU AND
THAT YOU

WILL SUCH INSTRUCTIONS BY RETURN - THANKS


BRGDS


-----------

From: Anca Tureac [mailto:anca.tureac@united.ro]
Sent: Wednesday, June 18, 2008 10:34 AM
To: Johnny CHRISTENSEN
Cc: 1 usa office
Subject: Re: RENATA - URGENT/URGENT

- 5 -

Dear Sirs,


Please kindly note the port D/As have already been arranged through Messrs Bristol Marine.


Regarding Bills of Lading reverting after checking with Shippers and with Messrs Calder Seacarriers / Messrs Bristol Marine.


Best regards,

Anca Tureac

_____

United Shipping Agency Srl

Constantza Port, Berth no. 31

Constantza 900900, Romania

Tel +40 241 672929, Fax +40 241 612420

Cell +40 723 599088, Email office@united.ro <mailto:office@united.ro>

----- Original Message -----

From: Johnny CHRISTENSEN <mailto:Johnny.CHRISTENSEN@unishipping.com>

To: Anca Tureac <mailto:anca.tureac@united.ro> ; Mail Unishipping <mailto:mail@unishipping.com>

Sent: Wednesday, June 18, 2008 10:51 AM

Subject: RENATA - URGENT/URGENT


TO UNIITED SHIPPING AGENCY

FM UNISHIPPING


RE RENATA - ACCOUNT CALDER SEACARRIERS

---

STILL MISSING YOUR CONFIRMATION THAT NO REPEAT NO BILLS OF LADING WILL BE

ISSUED/RELEASED WITHOUT OUR PRIOR CONSENT.


FURTHER PLEASE CONFIRM THAT NO OUTSTANDINGS ON D/A WILL BE CLAIMED AGAINST

THE OWNERS OF THE VESSEL AND SAME WILL BE COVERED BY THE CHARTERERS

MESSRS CALDER SEACARRIERS, THANKS


BEST REGARDS/JC

AS AGENTS FOR BAJA FERRIES

## Mihai Felescu

| | |
|---|---|
| **From:** | "Mihai Felescu" <mihai@united.ro> |
| **To:** | "Johnny CHRISTENSEN" <Johnny.CHRISTENSEN@unishipping.com> |
| **Cc:** | "1 usa office" <office@united.ro>; "Mail Unishipping" <mail@unishipping.com>; <oruano@bajaferriesusa.com> |
| **Sent:** | Tuesday, June 24, 2008 12:33 PM |
| **Attach:** | release order.TIF; renata appointment.tif |
| **Subject:** | Re: RENATA - URGENT/URGENT |

Dear Sirs,

Thanks very much your below - please kindly note we have already received Disponent Owners Messrs Bristol Marine green light to release the original Bills of Lading issued under the relevant c/p to the Shippers / Charterers of bulk urea shipment, in line with the terms / conditions of the c/p - please find attached herewith the release order and our official appointment as agents.

For any further information please kindly address your correspondence through the chain of contractual parties.

Best regards,
Mihai Felescu

------------------------------------
**United Shipping Agency Srl**
Constantza Port, Berth no. 31
Constantza 900900, Romania
Tel +40 241 672929, Fax +40 241 612420
Cell +40 722 666112, Email office@united.ro
Skype: mihai.felescu

----- Original Message -----
**From:** Johnny CHRISTENSEN
**To:** Mihai Felescu
**Cc:** 1 usa office ; Mail Unishipping ; oruano@bajaferriesusa.com
**Sent:** Tuesday, June 24, 2008 11:31 AM
**Subject:** RE: RENATA - URGENT/URGENT

ATTN MR FELESCU

WE NEED URGENTLY YOUR CONFIRMATION OF THE BELOW

BRGDS/JC

------------------------------------
**From:** Johnny CHRISTENSEN
**Sent:** Monday, June 23, 2008 6:19 PM
**To:** 'Mihai Felescu'
**Cc:** '1 usa office'; Mail Unishipping; 'oruano@bajaferriesusa.com'
**Subject:** RE: RENATA - URGENT/URGENT

ATTN MR FELESCU
----
PLEASE NOTE FOLLOWING OUR BELOW MESSAGE, WHILST WAITING YOUR CONFIRMATION OF YOUR ADHERING TO OUR INSTRUCTIONS – PLEASE NOTE THAT IRRESPECTIVE WHATEVER IS STATED IN RESPECT OF PAYMENT TERMS IN THE BILL(S) OF LADING DO NOT REPEAT DO NOT RELEASE WITHOUT OUR

PREVIOUS WRITTEN INSTRUCTIONS.

PLEASE CONFIRM, THANKS

BRGDS/JC
AS AGENTS FOR BAJA FERRIES

---

**From:** Johnny CHRISTENSEN
**Sent:** Monday, June 23, 2008 4:39 PM
**To:** 'Mihai Felescu'
**Cc:** '1 usa office'; Mail Unishipping; 'oruano@bajaferriesusa.com'
**Subject:** RE: RENATA - URGENT/URGENT

TO UNITED SHIPPING AGENCY
FM UNISHIPPING
CC BAJA FERRIES

ATT MR FELESCU

RE MV RENATA/CALDER

PLEASE CONFIRM BY RETURN THAT YOU/YOUR OFFICE STILL FOLLOWING OUR
INSTRUCTIONS NOT TO RELEASE THE ORIGINAL BILL(S) OF LADING FOR THIS
VOYAGE UNTIL FURTHER NOTICE RECEIVED IN WRITING FROM OUR OFFICE.

YOUR URGENT CONFIRMATION IS NEEDED, THANKS

BEST REGARDS/JC
AS AGENTS FOR BAJA FERRIES

---

**From:** Johnny CHRISTENSEN
**Sent:** Friday, June 20, 2008 5:30 PM
**To:** 'Mihai Felescu'
**Cc:** 1 usa office; Mail Unishipping; 'oruano@bajaferriesusa.com'
**Subject:** RE: RENATA - URGENT/URGENT

TO UNITED SHIPPING AGENCY
FM UNISHIPPING
CC BAJA FERRIES

ATT MR FELESCU

THANKS YOUR BELOW MESSAGE. CAN NOT  REPEAT  CAN NOT GIVE YOU AUTHORITY
TO RELEASE BILLS OF LADING YET AS FREIGHT NOT ON OWNERS ACCOUNT.

KEEP TIGHT TO THEM AND DO ONLY RELEASE SAME UPON OUR WRITTEN CONFIRMATION
THAT SAME CAN BE RELEASED.

BRGDS

29.07.2008

# Exhibit F

Message MT 103

Created 19.06.2008 16:35:16  Status : K (ACK : 19/06/2008 16:36)  Addressee : PIRBGRAAXXX PIRAEUS BANK SA

| Tag | Field Name | Content |
|-----|-----------|---------|
| 20 | SENDER REFERENCE | TR017149390X1100 |
| 23B | BANK OPERATION CODE | CRED |
| 32A | VALUE DATE, CURR., AMOUNT | 080620 |
| | | USD |
| | | 1523574,36 |
| 33B | CURRENCY/INSTRUCTED AMOUNT | USD |
| | | 1523574,36 |
| 50K | INSTRUCTING PARTY | /CH59086600108117300I/17149390 |
| | | INTERAGRO SA |
| | | 1-3 VERII STREET |
| | | SECTOR 2 |
| | | BUCHAREST/RO |
| 53A | SENDER' S CORRESPONDENT | BNPA |
| | | US |
| | | 3N |
| 54A | RECEIVER' S CORRESPONDENT | IRVT |
| | | US |
| | | 3N |
| 59 | BENEFICIARY | /GR3201720200005020034653151 |
| | | BRISTOL MARINE CO  LTD |
| 70 | REMITTANCE INFORMATION | FREIGHT MV RENATA |

THIS IS NOT A STATEMENT OF ACCOUNT. THIS IS AN INTERNAL DOCUMENT FOR YOUR INFORMATION ONLY, WITHOUT ANY COMMITMENT FOR THE BANK

71A    DETAILS OF CHARGES

OUR

THIS IS NOT A STATEMENT OF ACCOUNT. THIS IS AN INTERNAL DOCUMENT FOR YOUR INFORMATION ONLY, WITHOUT ANY COMMITMENT FOR THE BANK

# Exhibit G

## Mihai Felescu

**From:** "BML" <bmlchart@ath.forthnet.gr>
**To:** "Mihai Felescu" <mihai@united.ro>
**Sent:** Friday, June 20, 2008 4:45 PM
**Subject:** MV RENATA/INTERAGRO

Dear Mihai,

Further telcom pls note that dispows Messrs Bristol Marine hereby authorise you to release the Bills of Lading.

Best Regards/Cpt Dimitri

# Exhibit H

## Mihai Felescu

| | |
|---|---|
| **From:** | "박철인" <parkcu@posship.com> |
| **To:** | <OFFICE@UNITED.RO> |
| **Cc:** | "SJB" <jupiterbright@networkship.com> |
| **Sent:** | Wednesday, July 23, 2008 9:23 AM |
| **Subject:** | SJB-Ask for crew change at port of CONSTANTZA, ROMANIA |

Goodday, gentleman.

This is STX POS SHIP MANAGEMENT for M/V JUPITER BRIGHT.

M/V JUPITER BRIGHT will visit your port on around 27TH Jul. 2008.

We have crew change plan on her arrival at your port.

So I would like to request some information for crew change at your port.

1) Pls advise estimate cost for this crew change.

   (sign-on : 5 South korean // sign-off: 5 South korean)

2) Nearest air-port & vessel's berthing & working schedule.

3) Please advise on-signer must have entry visa or not.

4) Pls check & confirm below detail of your office.


Brgds.


< AGENT DETAIL >

   UNITED SHIPPING AGENCY LTD

   71, CUZA VODA STREET,

   CONSTANTZA 900697, ROMANIA

   TEL : +40-241-672-929

   FAX : +40-241-612-420

   TLX : 14265

   E-MAIL : OFFICE@UNITED.RO

DAVID, PARK

A. Manager /Crew Management Team 2
=====================================

STX POS SHIP MANAGEMENT

Tel    : 82-51-461-2075

Fax    : 82-51-464-8142

H.P    : 82-16-9567-9708

E-mail : parkcu@posship.com
=====================================

## Mihai Felescu

**From:**      "Madalina Bratu" <madalina.bratu@united.ro>
**To:**        "김미영" <mykim@posship.com>; <office@united.ro>
**Sent:**      Wednesday, July 23, 2008 9:43 AM
**Subject:**   Re: M.V JUPITER BRIGHT - Cash to Master

Dear Sirs,

Thanks for your message below.

Please kindly find below details for our bank account for USD remittances.

Meantime, please kindly note that the bank charges for cash withdrawal are 2pct of the total amount (for amounts higher than USD 2500.00), therefore when arranging payment please add such amount accordingly.

Bank            : ING BANK NV AMSTERDAM, BUCHAREST BRANCH, CONSTANTZA
AGENCY
Swift code      : INGBROBU
IBAN            : RO56INGB0004003164924014
Beneficiary     : UNITED SHIPPING AGENCY SRL, CONSTANTZA, ROMANIA
Reference       : CTM M/V Jupiter Bright

Correspondent banks:
Chase Manhattan
American Express

Upon remittance effected you are kindly requested to provide us the swift message for tracing the funds in due time, enabling us to deliver cash to Master accordingly.

Best regards,
Madalina Bratu

**United Shipping Agency Srl**
Constantza Port, Berth no. 31
Constantza 900900, Romania
Tel +40 241 672929, Fax +40 241 612420
Cell +40 723 562562, Email office@united.ro
−−−−− Original Message −−−−−

**From:** 김미영
**To:** office@united.ro
**Sent:** Wednesday, July 23, 2008 3:22 AM
**Subject:** M.V JUPITER BRIGHT - Cash to Master

To      UNITED SHIPPING AGENCY LTD.

From    Stx Pos ship management co.

Subj    M.V JUPITER BRIGHT − Cash to Master

01.08.2008

Good day! All,

This is STX POS SHIP MANAGEMENT CO. the ship managemant company, behalf of

the SAMMOK SHIPPING CO., LTD. the owner of M.V JUPITER BRIGHT.

We have a plan to remit CTM of MV JUPITER BRIGHT USD 50,000 at CONSTANTZA,

ROMANIA.

Would you get me to have your details of USD bank account by E-mail and charge or

commission for CTM delivery as soon as possible.

We'd like to let you deduct the commission for CTM delivery from the CTM you'll be

received, when you deliver the money to the master of sub vsl.

B.RGDS.


Mi - Young Kim
(金 美 英)
Crew Management Team 2
==========================================
STX POS SHIP MANAGEMENT

Tel     : 82-51-461-2084
Fax     : 82-51-464-8142
Mobile : 82-11-9041-6013
E-mail  : mykim@posship.com
==========================================
Have a nice day~~^^

01.08.2008

# Exhibit I

```
MIR NUMBER : 1108080728PNBPUS3NANYC7779216034      BR NO  : 322 SWIFT
MOR NUMBER : 0008080729HNBNKRSEAXXX4375784369      MAKE   : 2008/07/29
REF NUMBER : F0T322208001372                       STATUS : 90
```

DOC ID : 20080729130S00001

FROM    : PNBPUS3NNYC
          WACHOVIA BANK, NA
          NEW YORK,NY
          U. S. A.


MSG TYPE : MT199 : FREE FORMAT MESSAGE

:20 : Transaction Reference Number (TRN)
      WACNY0820620530
:21 : Related Reference
      F0T322208001372
:79 : Narrative
      NARRATIVE
      ATTN REMITTANCE
      WE REFER TO YR MT103, DATED 080724
      REFERENCE NUMBER 080724226438000 FOR USD
      50,000.00 VALUE 080724. WACHOVIA HAS RECEIVED A
      WRIT OF MARITIME ATTACHMENT WHICH IS A LEGAL
      MATTER BETWEEN THE PLANTIFF BAJA FERRIES USA LLC.
      AND DEFENDANT UNITED SHIPPING AGENCY SRL. THIS
      PAYMENT IS BEING HELD UNDER GARNISHMENT. SHOULD
      YOU HAVE ANY QUESTIONS, YOUR LEGAL DEPT. MAY
      CONTACT THE LEGAL FIRM CARDILLO AND CORBETT
      29 BROADWAY, SUITE 1710
      NEW YORK, NY 10006
      TEL.: (212) 344.0464  FAX: (212) 797.1212
      WEBSITE: WWW.CARDILLOCORBETT.COM. REFERENCE DOCKET
      08 CV 6031. FUNDS WILL BE RELEASED ON
      COURT ORDER. THANKS
      REGARDS,
      KEITH SPARR, CUSTOMER CARE

              ===============   END OF MESSAGE   ===============
```

# Details of Payment Order

Reference Number

FOT322208001372

Value, Currency, Amount

2008/07/24      USD           50,000.00

Ordering Customer

STX POS SHIP MANAGEMENT CO.

HEUNGWOO BUILDING(4F), 89-2, 4-KA,
JUNGANG-DONG, JUNG-KU, BUASN, KOREA

Intermediary Bank

Account With Institution

INGBROBU
ING BANK NV AMSTERDAM
BUCHAREST BRANCH CONSTANTZA AGENCY

ROMANIA

Beneficiary AC Number
and Name

RO56INGB0004003164924014
UNITED SHIPPING AGENCY SRL

Details of Payment

CASH TO MASTER
MV JUPITER BRIGHT

Details of Charges

SHA

OPERATING DATE : 2008/07/24

***** 참조 REF-NO :


Hana Bank