FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
United Shipping Agency SRL
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger (MU 0045)
Gina M. Venezia (GV 1551)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BAJA FERRIES USA L.L.C., | 08-cv-06031 (DC) |
| Plaintiff, | |
| - against - | **DECLARATION OF CLAIRE BILTON IN SUPPORT OF MOTION TO VACATE RULE B ATTACHMENT** |
| CALDER SEACARRIER CORP., FENBY CO. LTD., UNITED SHIPPING AGENCY SRL, BRISTOL MARINE CO. LTD. and BML CHARTERING, | |
| Defendants. | |

I, CLAIRE BILTON, pursuant to 28 U.S.C. §1746 hereby declare and say the following under penalty of perjury:

1. I am the Vice President of Interagro S.A., which has a place of business at 1-3 Verii Street, Sector 2, Bucharest, Romania ("Interagro Romania"). I am an authorized signatory of Interagro Romania.

2. I am familiar with the dispute between Baja Ferries USA LLC ("Baja") and United Shipping Agency SRL ("USA") that is the subject of this action and I submit this declaration in support of Defendant USA's application to vacate the attachment.

3. I assisted in the drafting of this Declaration, have reviewed and signed this Declaration, and submit that the contents are true and within my own personal knowledge.

1



4.  Interagro Romania was the shipper under the ocean bills of lading which were issued in connection with the voyage of the M/V RENATA in or about June 2008, from Constanza, Romania, to Mombasa, Kenya, in which a cargo of fertilizer in bulk was transported. A copy of the bills of lading is attached hereto as Exhibit J.

5.  The cargo that was transported under the bills of lading was the subject of a sales contract between Interagro as CFR seller and National Cereal and Produce Board ("NCPB") of Kenya as buyer.

6.  Title and risk to the cargo transferred from Interagro to NCPB of Kenya at the vessel's rail in Constanza.

7.  To our knowledge, Calder Seacarrier was never the owner of the cargo transported under the bills of lading.

8.  NCPB of Kenya paid Interagro for the cargo pursuant to the sales contract.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

DATED:   Sandhurst Kent, United Kingdom
         August 8, 2008

_____
CLAIRE BILTON

# EXHIBIT J

Page 2

CODE NAME:"CONGENBILL". EDITION 1994

Owner: VILARA MARITIME CO. LTD. MONROVIA, LIBERIA

B/L No. 2

**Shipper**
INTERAGRO SA.
1-3 VERII STREET SECTOR 2
BUCHAREST ROMANIA
TEL 40212103700
FAX 40212104805

**OCEAN BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES

Reference No.

**Consignee**
TO THE ORDER OF
BNP PARIBAS (SUISSE) S.A
GENEVA SWITZERLAND

**Notify address**
KENYA COMMERCIAL BANK LIMITED.
TRADE FINANCE CENTRE A/C
NATIONAL CEREALS AND PRODUCE BOARD
P.O. BOX 30586
NAIROBI KENYA

Copy Not Negotiable

**Vessel**
MV RENATA

**Port of loading**
CONSTANZA PORT ROMANIA

**Port of discharge**
MOMBASA PORT, KENYA

| Shipper's description of goods | Net weight |
|---|---|
| CALCIUM AMMONIUM NITRATE (CAN) FERTILISER GRADE GRANULAR, IN BULK | 4,206.997 METRIC TONS |

CLEAN ON BOARD
FREIGHT PREPAID
IDF NO. E0805051894
L/C REF. NO. LCRO86017087207C

(of which  NIL  on deck at Shipper's risk: the Carrier not being responsible for loss or damage howsoever arising)

| | |
|---|---|
| Freight payable as per CHARTER-PARTY dated............... | SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above. |
| FREIGHT ADVANCE. Received on account of freight: | Weight, measure, quality, condition, contents and value unknown. IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |
| Time used for loading ............ days ............ hours | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at | Place and date of issue CONSTANZA PORT ROMANIA  18.JUN, 08 |
|---|---|
| Number of original Bs/L.  3(THREE) | Signature MASTER OF MV RENATA CAPT. ROMKA MYKOLA |

[signature and ship's seal: MV RENATA NASSAU]

BILL OF LADING
TO BE USED WITH CHARTER PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL
MARITIME COUNCIL (BIMCO)

## Conditions of Carriage.

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.

(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment, shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

(b) Trades where Hague-Visby Rules apply.
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968—the Hague-Visby Rules—apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.

(c) The Carrier shall in no case be responsible for the loss or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.

General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof in London unless another place is agreed in the Charter Party.

Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) New Jason Clause.

In the event of accident, danger or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, Shippers, Consignees or the owners of the cargo shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo.

If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel, or vessels belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, Shippers, Consignees or owners of the goods to the Carrier before delivery.

(5) Both-to-Blame Collision Clause.

If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other non-carrying vessel or her Owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owners as part of their claim against the carrying Vessel or Carrier. The foregoing provisions shall also apply where the Owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight destination, etc., see overleaf.

Page 2

CODE NAME:"CONGENBILL". EDITION 1994

Owner: VILARA MARITIME CO. LTD. MONROVIA, LIBERIA

B/L No. 1

Shipper
INTERAGRO SA,
1-3 VERII STREET SECTOR 2
BUCHAREST ROMANIA
TEL 40212103700
FAX 40212104805

**OCEAN BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES

Reference No.

Consignee
TO THE ORDER OF
BNP PARIBAS (SUISSE) S.A
GENEVA SWITZERLAND

Notify address
KENYA COMMERCIAL BANK LIMITED.
TRADE FINANCE CENTRE A/C
NATIONAL CEREALS AND PRODUCE BOARD
P.O. BOX 30586
NAIROBI KENYA

Copy Not Negotiable

| Vessel | Port of loading |
|---|---|
| MV RENATA | CONSTANZA PORT ROMANIA |

Port of discharge
MOMBASA PORT, KENYA

| Shipper's description of goods | Net weight |
|---|---|
| CALCIUM AMMONIUM NITRATE (CAN) FERTILISER GRADE GRANULAR, IN BULK | 9,543.003 METRIC TONS |

CLEAN ON BOARD
FREIGHT PREPAID
IDF NO. E0805051894
L/C REF. NO. LCRO86017087207C

(of which NIL on deck at Shipper's risk: the Carrier not being responsible for loss or damage howsoever arising)

| Freight payable as per CHARTER-PARTY dated............... | SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above. |
|---|---|
| FREIGHT ADVANCE. Received on account of freight: .............. | Weight, measure, quality, condition, contents and value unknown. IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |
| Time used for loading ............ days ............ hours | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at | Place and date of issue CONSTANZA PORT ROMANIA 18.JUN, 08 |
|---|---|
| Number of original Bs/L 3(THREE) | Signature MASTER OF MV RENATA CAPT. ROMKA MYKOLA |

[Seal: MV RENATA NASSAU]

BILL OF LADING
TO BE USED WITH CHARTER PARTIES
CODE NAME: CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL
MARITIME COUNCIL (BIMCO)

## Conditions of Carriage.

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.

(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment, shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

(b) *Trades where Hague-Visby Rules apply.*
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968—the Hague-Visby Rules—apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.

(c) The Carrier shall in no case be responsible for the loss or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in charge of another Carrier, nor in respect of dock cargo or live animals.

(3) General Average.

General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof in London unless another place is agreed in the Charter Party.

Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) New Jason Clause.

In the event of accident, danger or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, Shippers, Consignees or the owners of the cargo shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo.

If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel, or vessels belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, Shippers, Consignees or owners of the goods to the Carrier before delivery.

(5) Both-to-Blame Collision Clause.

If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other non-carrying vessel or her Owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owners as part of their claim against the carrying Vessel or Carrier. The foregoing provisions shall also apply where the Owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight destination, etc., see overleaf.