UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BAJA FERRIES USA LLC,                           :
                                                :
                              Plaintiff,        :              ECF
                                                :
          -against-                             :
                                                :       08 Civ. 06031 (DC)
CALDER SEACARRIER CORP.                          :
a/k/a CALDER SEA CARRIER CORP.,                 :
FENBY CO. a/k/a FENBY CO. LTD.,                 :
UNITED SHIPPING AGENCY SRL,                     :
BRISTOL MARINE CO. LTD. and BML                 :
CHARTERING                                      :
                                                :
                              Defendants.        :
-------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO MOTION TO VACATE ATTACHMENT


                                   Cardillo & Corbett
                                   Attorneys for Plaintiff
                                   BAJA FERRIES USA LLC
                                   29 Broadway
                                   New York, New York 10006
                                   Tel: (212) 344-0464
                                   Fax: (212) 797-1212


Of Counsel
James P. Rau

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT I
THE GROUNDS FOR VACATUR ARE LIMITED BY AQUA STOLI . . . . . . . . . . . . . . . . . . 6

POINT II
PLAINTIFF  HAS STATED A VALID PRIMA FACIE ADMIRALTY
CLAIM PURSUANT TO RULE E(4)(f ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      1.  Plaintiff Has A Valid Prima Facie Maritime Contract Claim . . . . . . . . . . . . . . . . . . 8

      2.  Plaintiff Has A Valid Prima Facie Maritime Tort Claim . . . . . . . . . . . . . . . . . . . . 13

POINT III
DEFENDANT UNITED HAS AN ATTACHABLE INTEREST IN
THE FUNDS THAT HAVE BEEN RESTRAINED PURSUANT
TO THE ORDER OF ATTACHMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**TABLE OF AUTHORITIES**

**Cases:**

AET Inc. Limited v. Procuradoria de Servicos Maritmo
Cardoso & Fonesca , 464 F.Supp.2d 241(S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,16

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,
460 F.3d 434 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7,8,12,15

Asoma Corp. v. SK Shipping Co., 467 F.3d 817(2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 9

Cargill v. Esal (Commodities), Ltd., 1984 U.S. Dist. LEXIS 17839 (S.D.N.Y. 1984) . . . . . 13,14

Chiquita International Limited v. M/V BOSSE, 518 F.Supp.2d 589 (S.D.N.Y. 2007) . . . . . . . . 16

Dolco Invs., Ltd. v. Moonriver Dev., Ltd., 486 F. Supp. 2d 261(S.D.N.Y. 2007) . . . . . . . . . . . . 8

Essar Int'l, Ltd. v. Martrade Gulf Logistics, 2007 U.S. Dist. LEXIS 61713
(S.D.N.Y. Aug 23, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603,
111 S. Ct. 2071, 114 L.Ed. 2d 649 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

General Tankers Pte. Ltd. v. Kundan Rice Mills Ltd.,
475 F.Supp.2d 396 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.A. de C.V.,
2005 U.S. Dist. LEXIS 8009 (S.D.N.Y. May 4, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ice Flake Maritime Ltd. v. Westcoast AS, 2007 U.S. Dist.
LEXIS 75677 (S.D.N.Y. Oct. 11, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14
125 S.Ct. 385, 160 L. Ed. 2d 283 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Sea Transport Contractors, Ltd. v. Industries Chemiques Du Senegal,
411 F. Supp. 2d 386 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

Padre Shipping Inc., v. Yong He Shipping, 553 F. Supp. 2d 328
(S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10, 11,16,17

Sirius Ins. Co. (UK) Ltd. v. Collins, 16 F.3d 34 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 8

Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.,
475 F.Supp.2d 275 (S.D.N.Y 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8,12

Wilhelmsen Premier Marine Fuels v. UBS Provedores Pty. Ltd.,
519 F. Supp. 2d 399 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,13

Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263(2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 15

**Other Authorities:**

Supplemental Admiralty Rule B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Supplemental Admiralty Rule E(4)(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1 Thomas J. Shoenbaum, Admiralty & Maritime Law, (4th ed. 2004) . . . . . . . . . . . . . . . . . . . 13

Restatement of the Law, Second, Contracts (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## PRELIMINARY STATEMENT

Plaintiff BAJA FERRIES USA LLC ("Plaintiff" or "Baja") submits this Memorandum of Law in Opposition to the Motion to Vacate the Rule B Attachment by defendant, UNITED SHIPPING AGENCY SRL ("Defendant" or "United").

The Court is respectfully referred to the accompanying Declarations of Johnny Christensen ("Christensen Dec.") and James P. Rau, Esq. ("Rau Dec"), for additional facts regarding the motion.

This matter involves a maritime claim for breach of maritime contract against United for releasing freight prepaid bills of lading without first obtaining the written consent of Baja confirming the receipt of the freight in its bank account as was agreed to by United. As a result of United's unauthorized release of the bills of lading, Baja did not receive $482,755.72 in freight that was due to it. This action by United also constitutes in the alternative a maritime claim in tort.

Pursuant to this Court's Order for Process of Maritime Attachment dated July 2, 2008 (the "Order"), Process of Maritime Attachment and Garnishment was served on various garnishee banks. On or about July 24, 2008, $50,000 was attached at Wachovia Bank N.A. in New York in the form of an electronic funds transfer ("EFT") being sent to United by a third party, the owners or managers of a vessel.

On August 4, 2008 United moved to vacate the Order of attachment upon "emergency"oral application on the "sole ground" that there was no prima facie maritime claim against United. Specifically, it was United's position that there was no contract between it and Baja, and that there was no maritime tort. According to counsel for United this oral application was necessary because the attached funds were needed to pay a crew departing from a vessel in

Romania (where United is located) and must be released by no later than August 5, 2008, or the crew might arrest the vessel (Rau Dec., Exh 4). It should be noted that not unsurprisingly the crew never arrested the vessel (as no shipowner would let its ship be tied up for such a small amount, an amount it would make in a day or so of trading).

On the morning of the August 4 shortly prior to the hearing, United submitted a Declaration from Mr. Felescu of United ("Felescu Dec."), which ignored the June 18, 2008 agreement as plead by Baja in its Verified Complaint, this despite the fact that the June 18 agreement (as contained in emails of that date) was included in Exhibit E to his declaration. As the Court had not received this declaration by the time of the hearing, a copy of the June 18 email agreement was given to the Court by Baja's counsel for its review. The Court declined to decide a motion to vacate without papers and requested the parties to submit same.

United has now submitted a Supplemental Declaration from Mr. Felescu ("Felescu Supp. Dec") to try to explain away its June 18 agreement, without success. The detailed pleading of this agreement, combined with the Declaration of Mr. Christensen of Unishipping, Paris ("Unishipping"), who acted as agents for Baja in this matter, substantiates the June 18 agreement with United and the breach thereof by it.

In addition, United now raises in its motion to vacate a new ground that the funds attached are not its property–even though attached while being sent to its bank account. It claims that as an "agent" the funds belong to the third party shipowner who was sending the funds to United to use on its behalf. As shown below, this argument is directly contrary to the decisions of this Court, which have held that funds being sent to a defendant agent's account constitute an attachable property interest. In short, United's motion is utterly lacking in merit.

2

## FACTS

Baja is the time chartered owner of the vessel M/V RENATA (the "Vessel"). Baja chartered the Vessel to Calder Seacarriers Corp. ("Calder") by voyage charter party dated June 6, 2008 to carry a dry cargo of up to 14,000 metric tons from Romania to Kenya (the "Charter Party"). The Charter Party consists of a fixture recap containing the main terms of the agreement and an attached Gencon form, or proforma, which is to be amended to reflect the agreed upon terms Christensen Dec., Exh.2).

Under the terms of the Charter Party ninety-seven percent of the freight or $1,398,750, was to be prepaid to Baja within three days of completion of loading. The Charter Party also contained a standard lien clause providing Baja with a "lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight and demurrage...." (Id., Main Terms Line 132-136, Reinstating Printed Form Clause 20).

Under the Charter Party Calder was to appoint agents at the load port and was responsible for paying its fees. United was appointed agent in the load port by Calder. As part of its duties, United was to prepare and issue bills of lading under the Charter Party.

The Charter Party provided that if freight prepaid bills of lading were required "same to remain under the agents custody and to be released on receipt of the FRT [freight] into Ows [Baja's] bank account (Christensen Dec., Exh. 2 , Main Terms 09) Thus, if Calder required the bills of lading to be marked "freight prepaid" they would not be released from the agent's custody until Baja confirmed receipt of the freight in its bank account. This clause insures that Baja is paid the freight before freight prepaid bills are released. Therefore, if the freight were not received by Baja it would not release bills marked "freight prepaid", or would only allow "freight collect" bills of lading

3

to be issued and released, thereby preserving its right to lien the cargo for the unpaid freight (Id., ¶7).

Calder requested United to prepare bills of lading marked freight prepaid. On June 17, 2008, shortly before the Vessel completed loading, Mr. Christensen of Unishipping, requested United to send him a copy of the draft bills of lading prior to the Master's signing them (Id.,¶8).

On June 18, 2008 the Vessel completed loading and United sent Unishipping the draft bills of lading. On behalf of Baja, Unishipping instructed the Master of the Vessel to sign the prepaid bills of lading and to return them to United. At that same time, Unishipping instructed United to keep the original freight prepaid bills of lading in their custody until instructed to do so by them (Id., ¶¶ 9-10).

Several messages were sent to United by Unishipping on June 18, requesting United to confirm it had received and would follow Unishipping instructions concerning the release of the bills of lading. United responded initially that as they "have been appointed as agents through Calder Seacarriers", Unishipping's instructions regarding the bills of lading should go through Calder, "in order to avoid misunderstanding". This position was categorically rejected by Unishipping (Id., ¶ 11).

On June 18 Unishipping sent a message to United making it clear that they must follow its instructions or the bills of lading would be removed from their custody to insure that the freight prepaid bills were not released before payment was received by its principal Baja (Christensen Dec., Exh. 3). This message, the terms of which were accepted by United, forms the basis of Baja's contract claim against it.

> On June 18, Unishipping wrote the following to United:
> We as disponent owners of the RENATA have the final word and
> agents must obey our orders and or directions in respect of

4

documentation made/issued

Calder Seacarriers are paying -as part of our contract- the D/A [agency fees]but this does not mean that it releases you or your company to follow any orders and directions from our company

Please confirm by return, that the bills of lading will remain in your custody until further notice given from our office failing same will organize that the bills of lading is being picked up by a person of our trust. If you fail in following our orders and or directions have to take appropriate steps to protect our interest. Please confirm receipt of this message and that you will follow our instructions (emphasis added)

On June 18, United agreed to the above message as follows: "Thanks very much for your below instructions, which are duly noted and we confirm acting accordingly". (Christensen Dec, Exhibit 3).

In line with the above agreement, on June 20, 2008, United wrote to Unishipping asking whether it could release the bills of lading to the shippers as it understood the freight had been paid and the funds received.  Unishipping responded to United that day that it could not give them authority to  release the bills of lading as freight was not yet in not  Baja's account.  They were further directed to only release same upon Unishipping's written confirmation. (Christensen Dec., Exh. 4).

On June 20, however, United released the bills of lading despite Unishipping's clear instructions of that day not to do so.   Unishipping did not learn of this until several days later, when United informed it that it had released the bills of lading on the "authority" of defendant Bristol Marine Company (Bristol),  who apparently was a subcharterer of the Vessel.  Neither Unishipping nor Baja were informed prior to this of any subcharter by Bristol, but in any case it was irrelevant to United's compliance with the June 18 agreement made by it with Baja (Id ., ¶¶19-20).

It is undisputed that Baja did not receive the full freight due to it under the Charter

Party before the freight prepaid bills of lading were released by United. Instead, Baja received only a portion of the freight due to it under the Charter Party, leaving it some $500,000 short. This portion of the freight was attached by a third party creditor of Calder in an unrelated Rule B action before the funds were received in Baja's bank account. Had United adhered to the agreement with Baja and not released the freight prepaid bills of lading until instructed, Baja could have protected its lien on the cargo and its ability therefore to collect the unpaid portion of the freight.

## ARGUMENT

### POINT I

### THE GROUNDS FOR VACATUR ARE LIMITED BY AQUA STOLI

Rule E(4)(f) entitles any person claiming an interest in property restrained pursuant to Process of Maritime Attachment and Garnishment "to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."

The Second Circuit has held that "a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E". Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Under Rule E(4)(f), the "burden is on plaintiff to make four basic showings":

> [A]n attachment should issue under Rule B if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

<u>Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.</u>, 475 F.Supp.2d 275, 278 (S.D.N.Y

2006)  (quoting <u>Aqua Stoli</u>, 460 F.3d at 445); See <u>AET Inc. Limited v. Procuradoria de Servicos

Maritmos Cardoso & Fonesca</u>, 464 F.Supp.2d 241, 244 (S.D.N.Y. 2006)  ("the Second Circuit held

district courts are to look to the four corners of Rule B" as it 'specifies the sum total of what must be

shown for a valid maritime attachment') (quoting <u>Aqua Stoli</u>, 460 F.3d at 446-47).

       According to the Second Circuit in <u>Aqua Stoli</u>, 460 F.3d at 436,  once a plaintiff

satisfies this burden the attachment must be upheld, except in certain "limited circumstances", not

relevant here. <u>Aqua Stoli</u>, 460 F.3d at 445.[1]

       As stated above, United seeks to vacate the Order on two separate arguments: (1) the

complaint fails to allege a prima facie admiralty claim and, (2) the Defendant's property has not been

found within the district.  For the reasons set forth in Points II and III below, neither of United's

arguments have any merit.  The motion to vacate the attachment must be denied.

## POINT II

### PLAINTIFF HAS STATED A VALID PRIMA FACIE ADMIRALTY CLAIM PURSUANT TO RULE E(4)(f )

      <u>Aqua Stoli</u> requires the district courts to limit their Rule B inquiries to whether the

plaintiff has stated a prima facie basis for the maritime attachment at issue.  <u>Aqua Stoli</u>, 460 F.3d at

445.  "The majority of courts in this district . . . require the application of the prima facie standard,"

---

[1]  The Second Circuit enumerated those other "limited circumstances" in which vacutur is appropriate as follows: "[A] district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain a personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." <u>Id</u>.  None of these grounds are claimed by United.

<u>Dolco Invs., Ltd. v. Moonriver Dev., Ltd.</u>, 486 F. Supp. 2d 261, 266 (S.D.N.Y. 2007), where the

"Court [is to] look only to the Complaint" in deciding whether plaintiff's attachment is valid.

<u>Wilhelmsen Premier Marine Fuels v. UBS Provedores Pty. Ltd.</u>, 519 F. Supp. 2d 399, 410 (S.D.N.Y.

2007).  Some courts apply a "reasonable grounds" standard, where the court may also consider any

allegations or evidence offered in the parties' papers or at the post-attachment hearing. <u>Wajilam Exps.</u>,

475 F. Supp. 2d at  279.  Plaintiff's claim satisfies both standards.

   Notwithstanding United's attempts to argue the merits of its defense to Baja's claim in

its motion to vacate, the case before the Court turns on whether Baja has satisfied the first

requirement of <u>Aqua Stoli</u>, namely whether the complaint pleads "a valid prima facie admiralty

claim."  If the Court finds that the Baja presents a prima facie maritime claim, then the attachment

cannot be vacated.  <u>Aqua Stoli</u>, 460 F.3d at 447.  Conversely, if the complaint does not state a prima

facie maritime claim, the attachment should be vacated.  <u>Sea Transport Contractors, Ltd. v. Industries</u>

<u>Chemiques Du Senegal</u>, 411 F. Supp. 2d 386, 392 (S.D.N.Y. 2006); see also, <u>Dolco Invs., Ltd.</u>, 486

F. Supp. 2d at 266 ("To sustain the attachments, Dolco must demonstrate that it has "an in personam

claim against Defendants which is cognizable in admiralty...In other words, the plaintiff's must be one

which will support a finding of admiralty jurisdiction.").

**1.  <u>Plaintiff Has A Valid Prima Facie Maritime Contract Claim</u>**

   The admiralty jurisdiction of the district court extends to contracts "which relate to the

navigation, business, or commerce of the sea." <u>Sirius Ins. Co. (UK) Ltd. v. Collins</u>, 16F.3d 34, 36 (2d

Cir. 1994) (citations omitted).  As directed by the Supreme Court, district courts are to make a

case-by-case judgment of such a contract based upon "the subject matter of the...contract" and "the

services performed under the contract." <u>Exxon Corp. v. Central Gulf Lines, Inc.</u>, 500 U.S. 603, 612,

111 S. Ct. 2071, 114 L.Ed. 2d 649 (1991). The ultimate determination turns on "the nature and

character of the contract" and whether the contract has "reference to maritime service or maritime

transactions." Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 24, 125 S.Ct. 385, 160 L. Ed. 2d

283 (2004).

   In the case at hand, it cannot be seriously argued that the Plaintiff does not present a

valid prima facie maritime contract claim. The claim that is asserted against the defendant United is

that United breached its agreement with Baja, by issuing the freight pre-paid bills of lading in

violation of their agreement to await confirmation that the freight was received by Baja, for cargo that

was loaded on board the Vessel, to be carried from Romania to Kenya. (See, Rau Dec., Exh. 1,

Complaint at ¶¶ 32-41 ) .

   It is well settled that disputes involving ocean bills of lading should be interpreted

using ordinary principles of maritime contract law. See e.g., Asoma Corp. v. SK Shipping Co., 467

F.3d 817, 823 (2d Cir. 2006) ("Charter parties and bills of lading are interpreted using the ordinary

principles of maritime contract law."); Padre Shipping Inc., v. Yong He Shipping, 553 F. Supp. 2d

328 (S.D.N.Y. 2008); cf. Sea Transport, 411 F.Supp.2d at 396 (Judge Casey held that a Cooperation

contract to operate the defendant's shipping management was a maritime contract for the purposes of

justifying a Rule B attachment).

   In Padre Shipping, as in the present, a port agent hired by a charterer entered into a an

agreement with the plaintiff vessel owner under which the port agent was to issue bills of lading for

the cargo to be brought on board the M/V PADRE, under certain conditions. Among the conditions

was the requirement that the bills of lading expressly incorporate the terms of the charter party and a

prohibition against marking the bills of lading "freight pre-paid" unless the port agent received

9

specific instructions. The agreement between the parties was by authorization letter signed by the master and agent, and further provided that agent's failure to comply with the terms of the letter would render it liable for all damages arising from the unauthorized issuance of bills of lading.

Plaintiff alleged that the agent violated the authorization letter by issuing bills of lading for the cargo that, among other things, failed to expressly incorporate the terms of the charter party and were marked "freight prepaid" without proper authorization. As a consequence, the plaintiff vessel owner claimed that it was unable to impose liens on the cargo to secure its claim against the vessel's charterer for accrued unpaid hire.

As in the present case, the port agent moved to vacate the attachment for failure of the complaint to allege a valid prima facie admiralty and that it had no attachable property interest in the restrained funds which belonged to its clients who were not involved in the action. Judge Keenan rejected both arguments upholding the attachment.

With respect to the plaintiff's claim for the agent's breach of agreement concerning issuance of the bills of lading, the Court found this to be a maritime contract within its admiralty jurisdiction. As the Court stated:

> [I]t is undisputed that Padre's claim against Portrans sounds in admiralty and invokes this Court's admiralty jurisdiction. The claim arises from a dispute over the Authorization Letter, a contract signed by a ship's captain and a representative of a port agent, concerning the issuance of bills of lading for cargo to be carried aboard a commercial vessel on a transoceanic voyage. Further, Portrans does not and cannot dispute that the Complaint states the underlying facts with sufficient particularity to allow Portrans "to commence an investigation of the facts and to frame a responsive pleading." Fed.R. Civ. P. Supp. R. E(2)(a). The Complaint alleges that Portrans violated the Authorization Letter by issuing without proper authority bills of lading that were marked "freight prepaid" and by failing to incorporate the terms of the charter party into those bills. The Complaint further avers that Portrans'

10

breach prevented Padre from exercising a lien on the cargo to secure
Padre's claim for unpaid hire against Yong He. The Complaint's factual
allegations state the circumstances giving rise to Padre's claim against
Portrans with enough specificity under Supplemental Rule E(2)(a).

Moreover, the Complaint states a facially valid claim for breach of
maritime contract. 553 F.Supp.2d at 332-33.

As in Padre Shipping, Baja's claim sounds in admiralty and falls within the ambit of

the Court's admiralty jurisdiction as it arises from an agreement with United concerning issuance of

the bills of lading for cargo loaded on board the Vessel for a transoceanic voyage. The Complaint

herein further alleges that United's breach of the contract caused Baja to lose its lien on the cargo for

the unpaid freight of its charterer, Calder. As Baja has presented more than sufficient factual

allegations in the Complaint to satisfy any standard of pleading under the Federal Rules of Civil

Procedure, the Plaintiff 's claim against United is, on its face, a prima facie admiralty claim. In

addition, the undisputed contemporaneous written evidence submitted in this motion shows the June

18, 2008 agreement and the breach thereof by United, thereby also providing "reasonable grounds"

for the attachment.

Under the guise of challenging the existence of a prima facie claim, United has

resorted to challenging the merits of the claim based on its own interpretation of the facts and the law.

For example, United argues that its breach of the agreement with Baja did not "cause" Baja any harm

as Calder's payment of the freight would have been attached in any case. This argument is both

specious and absurd.

The whole point of the agreement requiring payment to be received in Baja's account

was to protect against non-payment by Calder–whatever the cause. If United had waited as

instructed, Baja could have issued "freight collect" bills of lading (or otherwise claused the bills

11

consistent with the Charter Party) thereby preserving its lien against the cargo and subfreights as provided for in the Charter Party. United's related argument that Baja had no right to assert a lien on the cargo also fails on this basis as Baja's lien would have been provided for in bills of lading issued after it had failed to receive the full freight due from Calder. Once United released the bills of lading marked freight prepaid, Baja was no longer able to protect itself from the risk, and here reality, of non-payment of the full freight due to it, by issuing freight collect bills of lading.

Moreover, United's argument that the June 18, 2008 contract is not enforceable for lack of consideration is also misplaced. The law is clear, that detrimental reliance constitutes consideration for formation of a binding contract. See Restatement of the Law, Second, Contracts (1981) § 90 (1) (" A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise...."). As shown above, there can be no question that Baja relied to its detriment upon United's promise not to release the bills of lading until the freight was received by Baja (See also Christensen Dec. ¶ 17 ).

None of the arguments presented by United suffice to provide grounds to vacate the attachment. In fact, they go well beyond the standard of scrutiny that the district court is to apply when presented with a motion to vacate a maritime attachment.

In Wajilam Exps. , Judge Lynch addressed the level of scrutiny to be used when presented with a motion to vacate post Aqua Stoli.   Judge Lynch held that a plaintiff is not required to prove its case in order to defeat a motion to vacate - discovery has not been had and it would defeat the purpose of a Rule B maritime attachment to require a plaintiff asserting a valid prima facie maritime claim to prove that the facts in the complaint are true. 475 F.Supp.2d at 279.   As

12

summarized by Judge Lynch in Wajilam: "A rule E(4)(f) hearing is not intended to definitely resolve the dispute between the parties, but only to make a preliminary determination of whether there are reasonable grounds for issuance of the arrest warrant." Id.; accord, Ice Flake Maritime Ltd. v. Westcoast AS, 2007 U.S. Dist. LEXIS 75677*4 (S.D.N.Y. Oct. 11, 2007) (citing to the Court of Appeals' decision in Aqua Stoli, Judge Castel held: "Certainly, it is not the office of a motion to vacate to examine a claim under Rules 12 or 56 of the Federal Rules of Civil Procedure" because attachments are to be obtained with a minimum of litigation."); Wilhelmsen Premier Marine Fuels , 519 F. Supp. 2d at 410 (plaintiff's "burden at this stage is minimal, whether that burden is defined by the prima facie admiralty claim standard, the reasonable grounds standard or as defendant characterizes it, the "fair probability" standard").

Under the circumstances of the present case, Baja sustains its burden of demonstrating that it has a valid prima facie maritime contract claim against United and that should be the end of the inquiry. United's arguments to the contrary on specific points, that go to the merits of the claim, seek to have this Court engage in a fact-intensive inquiry into the substance of the claim and such inquiry is improper for a Rule E(4)(f) hearing brought on by motion to vacate.

## 2.   Plaintiff Has A Valid Prima Facie Maritime Tort Claim

As Plaintiff has shown the Court to have admiralty jurisdiction based on its maritime contract claim it is unnecessary to also show a prima facie admiralty tort claim based on United's wrongful release of the bills of lading.   Suffice it to say, that United's assertions in its brief that Baja's claim does not meet the "locality" test for a maritime tort is misplaced where the issue concerns torts relating to bills of lading.  Cargill v. Esal (Commodities), Ltd., 1984 U.S. Dist. LEXIS 17839 (S.D.N.Y. 1984); see also 1 Thomas J. Schoenbaum, Admiralty & Maritime Law, p. 99 (4th

13

ed. 2004) ("in applying the locality rule to borderline situations, the courts hold that the tort occurs where the negligent or intentional act takes effect, not where the act occurred.... Intentional torts such as fraud, misrepresentation and fraudulent inducement to contact and defamation must have an effect on navigable waters to be within admiralty jurisdiction").

In <u>Cargill</u>, Judge Knapp evaluated a similar jurisdictional issue involving a fraudulent bill of lading. The plaintiff alleged that the defendant had wrongfully exercised dominion and control over plaintiff's cargo by creating and presenting to a bank a fraudulent bill of lading (activities which necessarily could only occur on land) while the cargo was at sea. The court stated, "Defendant, through its agent, wrongfully exercised dominion and control over plaintiff's cargo and effected such conversion while the cargo was on navigable waters. Such conduct is a maritime tort and falls within our admiralty jurisdiction." 1984 U.S. Dist. LEXIS at *3. There is no relevant distinction between a tort arising out of a fraudulent bill of lading and one arising out the wrongful issuance of prepaid bills of lading. United wrongfully issued documents of title covering cargo loaded on a vessel which was on the navigable waters.

## POINT III

### DEFENDANT UNITED HAS AN ATTACHABLE INTEREST IN THE FUNDS THAT HAVE BEEN RESTRAINED PURSUANT TO THE ORDER OF ATTACHMENT

Rule B provides, in relevant part:

> If a defendant is not found within a district ...a verified complaint may contain a prayer for process to attach the defendant's *tangible or intangible personal property*--up to the amount sued --in the hands of garnishees named in the   process ...(Emphasis Added).

14

The Second Circuit has held that the definition of "property" is broad for the purposes of a Rule B attachment. <u>Winter Storm Shipping, Ltd. v. TPI</u>, 310 F.3d 263, 275 (2d Cir. 2002); <u>Essar Int'l, Ltd. v. Martrade Gulf Logistics</u>, 2007 U.S. Dist. LEXIS 61713 *4 (S.D.N.Y. Aug 23, 2007). In <u>Winter Storm</u>, the Court of Appeals noted: "It is difficult to imagine words more inclusive than 'tangible or intangible' … The phrase is the secular equivalent of the creed's reference to the maker 'of all there is, seen and unseen.'" <u>Winter Storm</u>, 310 F.3d at 276.

It is undisputed that attachable property for purposes of a Rule B attachment includes EFTs in the possession of an intermediary bank that are en route from a defendant remitter or en route to a defendant recipient. <u>Winter Storm</u>, 310 F.3d at 276-78; <u>Aqua Stoli</u>, 460 F.3d at 445-46.

Consistent with the Court of Appeals' broadly inclusive view of attachable property for purposes of Rule B attachment, it is further well-settled that more than one party can have an attachable interest in the same property. <u>Winter Storm</u>, 310 F.3d at 278. For example, both the sender and recipient of an EFT can have "overlapping property rights," rendering the EFT attachable under Rule B if either party is a named defendant. *See,* <u>HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.A. de C.V.</u>, 2005 U.S. Dist. LEXIS 8009 * 10 (S.D.N.Y. May 4, 2005)(The district court, Buchwald, D.J., held the defendant Proteinas had a clear attachable interest in funds which were sent as payments to Proteinas even though the sending-payor may have had an attachable interest as well.); <u>General Tankers Pte. Ltd. v. Kundan Rice Mills Ltd.</u>, 475 F.Supp.2d 396, 399 (S.D.N.Y. 2007) (The district court, Marrero, D.J., noted: "The result [of Aqua Stoli], allowing the attachment of an EFT against both the originator and beneficiary, was readily accepted by reason of the broad terms of Rule B's

15

attachment language which does not require exclusive property interests).

Moreover, United's argument that the attachment should be vacated because as an agent it allegedly has no attachable interest in the EFT being sent to its bank account by a third party is contrary to the law in the Southern District of New York. AET Inc. Limited, 464 F.Supp.2d 241; Chiquita International Limited v. M/V BOSSE, 518 F.Supp.2d 589 (S.D.N.Y. 2007); Padre Shipping, 553 F.Supp.2d 238. Indeed, United has cited no authority which supports its position.

Under the circumstances of this case, the decision of this Court in AET Inc., provides the proper analysis and the Court should reach the same result in this motion. In AET Inc., this Court was presented with argument that is identical to the one presented by United in that the defendant Procuradoria maintained that the EFTs restrained were not its property, but were, instead, the property of its customers being transferred to Procuradoria for payment of expenses to third parties. 464 F.Supp.2d at 243. The Court, observed: "[t]he Second Circuit held that even though funds were intended as payment to a third-party, they were still property of the defendant subject to attachment." 464 F.Supp.2d at 245. The Court also pointed out that funds in question were commingled, i.e. the payments were not held in a special trust account or in any other form of segregated account for the benefit of *a particular* ship owner. 464 F.Supp.2d at 245. United has nowhere claimed in the two declarations submitted that the EFTs being sent to it in this case were placed in a any special escrow or in trust. Rather, the funds were being deposited in a general account of United, over which it had full possession and control.

More recently Judge Keenan in Padre Shipping rejected the identical argument by a Chinese port agent. The agent, Portrans, had argued that EFTs being sent to and from its bank

16

account was not its property, but belonged to its clients . Portrans had submitted affidavits

attesting that :

> (1) the restrained EFT in the amount of $ 558,499.33 represents
> freight money that Portrans had collected and was remitting on
> behalf of and at the direction of its client, Golden Pacific; and (2)
> the restrained EFT in the amount of $ 22,000 was sent to Portrans
> from its client, Kent Shipping, as an advance for disbursements
> that Portrans would make on Kent's behalf.   553 F.Supp.2d at 334.

The Court rejected this argument and discussed the prior precedents of this court

which also so held, as follows at page 335:

> The two other district courts that have confronted this issue are in
> accord. See Chiquita Int'l. Ltd. v. MV BOSSE, 518 F. Supp. 2d
> 589 (S.D.N.Y. 2007); AETInc. Ltd. v. Procuradoria de Servicos
> Martimos Cardoso & Fonesca, 464 F. Supp.2d 241 (S.D.N.Y.
> 2006). In both cases, port agent defendants who were originators
> and/or beneficiaries of attached EFTS claimed that, because they
> were merely agents handling their client's money, they had no
> attachable interest in the transferred funds. See Chiquita, 518 F.
> Supp. 2d at 593; AET, 464 F. Supp. 2d at 242. The courts in both
> cases concluded that the fact that the EFTS were wired to and/or
> from defendants' accounts was sufficient to establish an attachable
> interest in the funds under Winter Storm and Aqua Stoli. Judge
> Leisure's analysis in Chiquita is especially instructive:
>
>> [Defendant's] assertions regarding agency and
>> ownership of theattached funds are unpersuasive.
>> Regardless of [its] management role with respect to
>> the other non-party shipowners with whom it does
>> business, it is undisputed that the funds were
>> directed to or from defendant['s] bank accounts.
>> [Defendant's] intended use of the funds that were in
>> its account is irrelevant here. Therefore, the restraint
>> of funds was proper under Second Circuit
>> precedent.

United does not distinguish these cases, but rather states "it does not agree" with

them. ( United Brief, page 22).   In short, United's argument is foreclosed by the weight of

authority from the Courts in the Southern District of New York that have addressed the issue in the same context as it is presented here.

Accordingly, United has an attachable interest in the funds restrained by garnishee Wachovia.

## **CONCLUSION**

For all the foregoing reasons, Defendant's motion to vacate the attachment should be denied.

Dated: New York, New York
        August 18, 2008

                                    Respectfully submitted,

                                    CARDILLO & CORBETT,
                                    Attorneys for Plaintiff
                                    BAJA FERRIES USA LLC

                                    By: _____
                                        James P. Rau (JR 7209)

                                        29 Broadway, Suite 1710
                                        New York, New York 10006
                                        212-344-0464.

18