FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
United Shipping Agency SRL
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Gina M. Venezia (GV 1551)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BAJA FERRIES USA L.L.C., | 08-cv-06031 (DC) |
| Plaintiff, | |
| - against - | |
| CALDER SEACARRIER CORP., FENBY CO. LTD., UNITED SHIPPING AGENCY SRL, BRISTOL MARINE CO. LTD. and BML CHARTERING, | |
| Defendants. | |

**DEFENDANT UNITED SHIPPING AGENCY'S
REPLY MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION TO VACATE ATTACHMENT</u>**

NYDOCS1/311281.1

**PRELIMINARY STATEMENT**

Defendant United Shipping Agency SRL ("USA") submits this reply memorandum in further support of its application to vacate the Rule B attachment obtained by Plaintiff Baja Ferries ("Baja") and in response to Baja's opposition papers. For the reasons explained more fully herein, Baja has failed to sustain its burden of proving that it has a valid prima facie maritime claim against USA. The attachment thus must be vacated in its entirety as to USA.

**SUMMARY OF REPLY**

Baja's opposition is remarkable not for what it says, but for what it ignores. Baja fails to address in any meaningful way USA's primary argument that the attachment cannot be maintained because USA's alleged actions in releasing the bills of lading have no connection whatsoever with Baja's alleged injury (*i.e.* the inability to exercise a lien on the cargo at the discharge port for the portion of freight caught by the Calder attachment). As explained in USA's main motion papers, the cargo at issue was owned by the National Cereals and Produce Board of Kenya ("NCPB"), a governmental entity.[1] As a matter of law, the NCPB's cargo was immune from any sort of lien regardless of what happened with or was stated in the bills of lading.[2] Baja's allegation to the contrary is simply not true.

This is not an argument aimed at an inquiry into the merits, but one which focuses on the utter falsity of Baja's specific allegation that USA's actions prevented the exercise of a lien on the cargo – an allegation which serves as the basis for Baja's stated claim against USA. (*See*

---

[1] *See* Declaration of Claire Bilton ¶¶ 5-7; and USA Main Memo. p. 13 pointing out that the cargo was owned by a third party against whom no lien could be asserted.

[2] The Court is respectfully referred to the Declaration of Richard Omwela, which confirms that under the law of the discharge port in Kenya, no lien could be asserted against the cargo as a matter of Kenyan law even if the bills of lading stated that they were "freight collect". Mr. Omwela's Declaration is submitted in direct response to Baja's unsupported assertion in its opposition papers that had USA "waited as instructed, Baja could have issued 'freight collect' bills of lading (or otherwise claused the bills consistent with the Charter Party thereby preserving its lien against the cargo and subfreights provided for in the Charter Party." (*See* Baja Memo. pp. 11-12).

Verified Comp. ¶40). Although it recognizes, as it must, that it bears the burden of proof at this stage of the proceedings, Baja makes no effort to demonstrate that under the applicable law, its allegations are sustainable. USA submits that Baja makes no such effort because it knows that it cannot. The law at the discharge port is clear – no lien could have existed against the cargo and consequently the claim against USA based on that allegation is unsustainable for this reason alone.

In addition to this defect in Baja's presentation, its arguments about the existence of an alleged agreement between USA and Baja are an insufficient basis on which to sustain the attachment. Baja has not offered any evidence that it had a binding agreement with USA under the applicable law. Even assuming that there was such an agreement (a fact which is not admitted),[3] USA's actions have no relation to the complained of injury as discussed above, and even if they did, the claim for breach of the alleged email agreement does not give rise to maritime contract or tort jurisdiction. This case is not akin to those involving a letter of authorization issued by a ship's master. Baja was not the vessel owner. It was a charterer, and the alleged agreement between a charterer and its purported agent to handle documentation is not uniquely maritime. Thus, even assuming Baja's allegations were remotely sustainable they do not constitute maritime claims as required by Rule B. The attachment should be vacated.

---

[3] USA specifically denies that it entered into any agreement with Baja. As explained in its main motion papers, USA was appointed by Bristol to act as agent under the Bristol-Interagro charter. Baja's allegation that USA was appointed by Calder under the Baja-Calder charter is simply false. However, for purposes of the instant motion only, even if Baja's allegations about the appointment of USA were true, the attachment is not sustainable for the reasons discussed herein and in USA's main motion papers.

NYDOCS1/311281.1                                          2

## RESPONSE TO BAJA'S ARGUMENTS

A.  **Baja fails to satisfy its burden of proof at this attachment stage, and under the applicable standards, the Court is free to examine whether Baja's allegations against USA are sustainable under the governing law.**

There is no dispute that Baja bears the burden of showing why the Rule B attachment should not be vacated and consequently bears the burden of proving that it has a valid prima facie maritime claim against USA. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 n.5 (2d Cir. 2006). As this Court recognized, this inquiry exists, in part, to ensure "that a plaintiff does not 'hold, for a substantial period of time, property to which, in reality, it has no legitimate claim.'" *Navision Shipping A/S v. Yong He Shipping (HK) Ltd.*, No. 07-9517 (DC), 2008 U.S. Dist. LEXIS 62423, at *8 (S.D.N.Y. Aug. 8, 2008) (Chin, J.).

Baja admits that the burden of proof is its and also acknowledges that in assessing whether a plaintiff satisfies its burden, the district courts apply a variation of two standards that have become known as "the prima facie" standard which essentially focuses on the allegations in the complaint and the "reasonable grounds" standard which considers evidence extrinsic to the complaint. Baja then states without much analysis that it has satisfied both standards because its complaint states a valid prima facie admiralty claim. (Baja Memo. p. 8). Baja's arguments on the standard of proof are flawed.

This Court has already recognized, both during the August 4, 2008, hearing in this case and in prior Rule B decisions, that its review is not limited to the adequacy of the allegations in the complaint. Instead, this Court has applied the reasonable grounds standard and held that it will consider extraneous evidence submitted by the parties in their motion papers and Rule E(4)(f) hearing. *See, e.g., Navision Shipping*, 2008 U.S. Dist. LEXIS 62423, at *10 n.8. Baja has in fact submitted the declaration of its broker. The Court is thus free to examine any

evidence submitted by the parties and is not limited to evaluating the allegations in Baja's complaint. As explained below, when all extraneous evidence is considered against the allegations of Baja's complaint, it is clear that Baja has not stated a valid sustainable claim against USA.

Under the prima facie or reasonable grounds standard, Baja still has the burden of identifying the law governing the underlying dispute and demonstrating that, under that law, the allegations in the complaint demonstrate a valid *prima facie* claim against USA. *See OGI Oceangate Trans. Co. v. RP Logistics Pvt.*, No. 06-9441 (RWS), 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. June 21, 2007) (Sweet, J.), *reh'g denied*, 2007 U.S. Dist. Lexis 74180 (S.D.N.Y. Oct. 4, 2007); *Stolthaven Houston, Inc. v. RACHEL B*, 2008 U.S. Dist. LEXIS 55723 (S.D.N.Y. July 18, 2008) (Patterson, J.); *Naias Marine S.A. v. Trans Pacific Carriers Co.*, 2008 U.S. Dist. LEXIS 2438 (S.D.N.Y. Jan. 9, 2008) (Leisure, J.).

For example, in *OGI Oceangate*, 2007 U.S. Dist. LEXIS 46841, Judge Sweet vacated an attachment seeking security for plaintiff's claim that the defendant had caused the wrongful arrest of a vessel in India. No evidence was offered on the validity of such a claim under the foreign law. Judge Sweet, applying the prima facie standard, vacated the attachment on the grounds that the plaintiff had failed to establish a prima facie claim for wrongful arrest. Judge Sweet reasoned that "[w]ithout an understanding of the applicable law, the Court is unable to determine whether [the plaintiff] has a valid prima facie claim of wrongful arrest. Since [the plaintiff] has the burden of affirmatively showing that it has such a claim..., [the] plaintiff has failed to meet its burden with respect to his claim of wrongful arrest." *Id.* at *14.

Thus, under either standard, the Court remains obliged to make certain conclusions regarding the validity of Baja's claim and whether that claim has any basis to be sustained under

the governing law. *See OGI Oceangate*, 2007 U.S. Dist. Lexis 74180 at *6 (noting that under *Aqua Stoli* the district court's role is to make conclusions regarding the validity of plaintiff's claims). Here, as in *OGI*, Baja makes no effort to identify the law governing the underlying dispute with USA or to show that it has a sustainable claim against USA under that law. Baja instead cites to certain aspects of U.S. law, but it is highly doubtful that U.S. law would apply in a case involving a voyage from Romania to Kenya. The declaration of Baja's broker, Mr. Christensen, does nothing more than restate the facts alleged in Baja's complaint, but again there is no explanation as to whether those allegations are sustainable under the law. Baja thus fails to satisfy its burden of proof regardless of the standard of proof applied.

Indeed, and as explained below, Baja's claims are not sustainable under the governing law and the attachment must therefore be dismissed. The inquiry in this regard is not fact-intensive or an impermissible analysis of the merits. The inquiry focuses on the specific allegations of Baja's complaint and the threshold question of whether Baja has stated a sustainable claim against USA under the governing law. As explained above, this is precisely the type of inquiry which *Aqua Stoli* mandates a district court to perform in evaluating whether a plaintiff has properly obtained an attachment.

B.  **Baja's allegations against USA are not sustainable as a matter of law.**

It is clear from Baja's complaint and arguments in opposition that the entire crux of its claim against USA hinges on the allegation that because USA released the bills of lading,[4] Baja "was unable to exercise a lien on the cargo for payment of the freight that remained

---

[4] In its papers, Baja refers to USA as having improperly "issued" the bills of lading. This is a misnomer because the bills of lading here were "issued" by the vessel's master. USA was charged with the duty under the Bristol-Interagro charter (not the Baja-Calder charter) to prepare the bills of lading and transmit them once signed and issued by the master. At bottom therefore, Baja's complaint is that USA improperly "released" or "transmitted" the bills of lading.

NYDOCS1/311281.1                                5

outstanding." (*See* Verified Comp. ¶40; Christensen Decl. ¶20; Memo. p. 6). Baja argues in its opposition that had USA not breached its alleged agreement and released the bills of lading, Baja could have issued "freight collect" bills and protected its lien on the cargo. (Memo. pp. 6, 11). Baja claims that USA's action "caused Baja to lose its lien on the cargo for the unpaid freight." (*Id.* at 11). The argument is fallacious.

There is no dispute that the cargo at issue was owned by the Kenyan National Cereals and Produce Board, a governmental entity. (*See, e.g.,* Bilton Decl. ¶¶ 5-7). Notwithstanding that this fact was made known to Baja with USA's main motion papers, Baja does not provide any legal support for its assertion that it could have liened the cargo, choosing instead to rely on unsubstantiated statements in its memorandum that it could have issued "freight collect" bills of lading or otherwise claused the bills to exercise a lien. (Baja Memo. p. 12). Yet, like the plaintiff in *OGI*, Baja does not identify or demonstrate that under the applicable law it would have had any such lien even if "freight collect" bills had been issued.

The law is indeed to the contrary. As demonstrated by the Declaration of Richard Omwela, the cargo was immune under Kenyan law (the place where any such lien would have been asserted and thus the law governing the lien issue) from any sort of lien regardless of what was stated in the bills of lading.[5] There is no dispute on this point of law. Thus, the entire premise on which Baja seeks to hold USA responsible for the freight payment owed by Calder is not supportable as a matter of law and Baja's allegation in its complaint is simply not true.[6]

---

[5] The same result would exist under U.S. law which immunizes the property of a "foreign sovereign" from any sort of pre-judgment attachment. *See* 28 U.S.C. § 1609.

[6] Baja's allegation that USA's action caused Baja to lose its lien is not the only untrue allegation in the complaint. For instance, Baja alleged (without any proof) that Calder appointed USA as agent, that USA was appointed under the Baja-Calder charter, and that Calder instructed USA to issue freight prepaid bills of lading. None of these allegations is true. USA was appointed by Bristol under the Bristol-Interagro charter. USA had not even seen a copy of the Baja-Calder charter. Bristol, not Calder, requested the preparation of freight prepaid bills of lading and

Baja's memorandum makes no real effort to address this point because it cannot. *Aqua Stoli* requires this sort of examination, and when Baja's complaint is examined under the applicable law, it is clear that its allegations cannot be sustained. Consequently, the attachment must be vacated for this reason alone.

C. **Even if Baja had alleged a prima facie valid claim against USA, such a claim does not give rise to maritime jurisdiction.**

    *1.* *There is no maritime contract jurisdiction over the alleged email agreement between Baja, a charterer, and USA, an agent, concerning the transmission of bills of lading.*

Apparently ignoring the absence of any legal support for its lien allegations, Baja jumps quickly in its memorandum to an argument that its email agreement with USA concerning the release of the bills of lading gives rise to maritime contract jurisdiction. Baja relies almost exclusively on *Padre Shipping Inc. v. Yong He Shipping*, 553 F.Supp.2d 328 (S.D.N.Y. 2008), for this argument, but *Padre Shipping* is easily distinguishable.

*Padre Shipping* held that a claim by a shipowner against an agent under a letter of authorization gave rise to maritime contract jurisdiction. The court described the "authorization letter" as "a contract signed by a ship's captain and a representative of a port agent, concerning the issuance of bills of lading." 553 F.Supp.2d at 332. Here, the alleged agreement is not one with a ship's captain or the vessel owner. Unlike the plaintiff in *Padre Shipping*, Baja is not the vessel owner, not the carrier under the bills, and not the issuer of the bills. Baja is only a charterer in the chain of charters. Further, the alleged agreement between Baja and USA has nothing to do with the issuance of the bills of lading. The bills had already been signed and issued by the master (a fact which Baja does not dispute). The alleged agreement (even assuming an agreement exists, which USA denies) concerned the "release" (*i.e* transmission) of

---

USA prepared and released freight prepaid bills of lading in accordance with those instructions and in full compliance with the Bristol-Interagro charter.

NYDOCS1/311281.1                          7

the bills of lading that had already been signed and issued by the master. The instant case is thus not *Padre Shipping* and any reliance on that case is misplaced.[7]

Furthermore, and as pointed out in USA's main memorandum, there was no consideration for the alleged email agreement. Baja does not dispute that it paid USA nothing in consideration for the alleged agreement, but rather argues that its reliance on the purported agreement is sufficient consideration, citing to U.S. law. (Baja Memo. p. 12). Yet, U.S. law is clearly not the governing law on the existence of the alleged agreement, and Baja again fails to make any showing that the email agreement created a binding agreement with USA under the law that would be applicable to that issue. Absent such a showing, Baja has failed to demonstrate that it has a valid prima facie contract claim against USA. As such, there is no basis on which maritime contract jurisdiction can be based.

### 2.  *There is no basis for the exercise of admiralty tort jurisdiction.*

As explained in USA's original memorandum, Baja must satisfy the two-pronged test required for the exercise of admiralty tort jurisdiction, as the determination of whether allegations of tortious conduct give rise to admiralty jurisdiction turns on whether conditions of **both** "location" and "connection with maritime activity" are met. *Jerome B. Grubhart, Inc. v. Great Lakes Dredge and Dock Co.*, 513 U.S. 527, 534 (1995); *Sisson v. Ruby*, 497 U.S. 358 (1990). With its opposition, Baja fails to offer any support that the alleged actions of USA satisfy this test. Instead, citing to a 1984 district court case, Baja argues that the alleged effect caused by USA's actions is sufficient to satisfy the test for maritime jurisdiction. (Baja Memo.

---

[7] Although not cited in Baja's memorandum, the case of *Navision Shipping*, 2008 U.S. Dist. Lexis 62423, recently decided by this Court is also distinguishable. The alleged agreement giving rise to maritime jurisdiction in *Navision* was (like *Padre Shipping*) an authorization letter signed by the ship's master and the agent which gave the agent certain authority to sign and issue bills of lading on behalf of the master. The instant case does not involve a letter of authorization, or any other form of authorization, from the master of the vessel to USA. Instead, this case involves a few emails which at best are ambiguous to/from a charterer with no proprietary ownership interest in the subject vessel. The agreement also does not concern the signing and issuance of bills of lading, as they had already been signed and issued by the master.

p. 14 (citing *Cargill v. Esal (Commodities) Ltd.*, 1984 U.S. Dist. Lexis 17839 (S.D.N.Y. 1984)). *Cargill*, however, was decided before the Supreme Court made clear that there is a two-part test for an exercise of maritime tort jurisdiction, and the *Cargill* case contains no discussion of the location prong of the test. *Cargill* is thus not relevant to the inquiry here.

The location test is clearly not met, as the alleged tortious conduct concerning classic land-based bailment duties occurred on land and does not involve an injury on land via a vessel. Baja's failure to establish the location test is fatal to an assertion of admiralty jurisdiction, even if the connection test is met. *See, e.g., In re Madison Coal & Supply Co,* 321 F. Supp. 2d 809, 812 (S.D. W. Va. 2003). Baja has thus failed to demonstrate a valid prima facie maritime tort action against USA.

## CONCLUSION

For these reasons as well as those contained in its main motion papers, USA requests that the attachment issued against its assets be vacated and USA be awarded any and other relief which the Court deems appropriate.

Respectfully submitted,

/s/ Gina M. Venezia
Gina M. Venezia (GV1551)
Freehill, Hogan & Mahar, LLP
80 Pine Street
New York, New York  10005
Phone:  (212) 425-1900
Fax:  (212) 425-1901
Email:  venezia@freehill.com
Attorneys for Defendant United Shipping Agency SRL

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will automatically send email notification of such filing to all attorneys of record. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below service list in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notice of Electronic Filing.

**VIA CM/ECF:**

James Peter Rau
Cardillo & Corbett
29 Broadway, Suite 1710
New York, NY 10006
Tel: 212-344-0464
Fax: 212-797-1212
Email: jrau@cardillocorbett.com


/s/ Gina M. Venezia
Gina M. Venezia